# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER BANDY, on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 3:23-cv-00598 |
| TOC ENTERPRISES, INC d/b/a Tennessee Orthopaedic Clinics, a division of TENNESSEE ORTHOPAEDIC ALLIANCE, P.A., | ) ) ) ) ) | District Judge Aleta A. Trauger |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................ii

TABLE OF AUTHORITIES ......................................................................................v

I.      INTRODUCTION .......................................................................................1

   II.     CASE SUMMARY.................................................................................3

   a.      Initial Investigation and Communications ..........................................3

   b.      Procedural Posture and History of Negotiations.................................4

III.    SUMMARY OF SETTLEMENT ..............................................................5

   a.      Settlement Class ...................................................................................5

   b.      Settlement Benefits ..............................................................................5

      1.     Monetary Relief ...........................................................................6

      2.     Credit Monitoring and Identity Theft Restoration Services .......7

   c.      The Notice and Claims Process ...........................................................7

      1.     Notice............................................................................................7

      2.     Claims ...........................................................................................8

      3.     Requests for Exclusion .................................................................8

      4.     Objections .....................................................................................9

   d.      Proposed Attorneys' Fees and Plaintiff Service Awards. ....................9

IV.    LEGAL AUTHORITY ............................................................................10

V.     ARGUMENT ...........................................................................................12

   a.      The Settlement Class Should be Certified ..........................................12

      i.      The proposed Class is sufficiently numerous .............................14

      ii.     Questions of law and fact are common to the Class....................14

iii.    Plaintiff's claims and defenses are typical to those of the Settlement Class ......... 15

iv.    Plaintiff will adequately protect the interest of the Class ..................................... 16

v.    Common issues predominate over individrualized ones, and the class treatment is superior to individualized ligitation ................................................................. 17

b.    The Settlement Terms are Fair, Adequate, and Reasonable .......................................... 17

i.    Class Representatives and Class Counsel have adequately represented the Class ................................................................................................................. 19

ii.    The settlement was the result of informed, non-collusive, arms'-length negotiations by experienced counsel ................................................................. 20

iii.    The Settlement Agreement provides significant relief for real harms, as well as protections against the risk of further harm for Settlement Class Members .... 21

1.    The Settlement provides substantial relief for the class...................... 21

2.    The method of processing claims and distributing relief is clear and efficient .............................................................................................. 22

a.    The Class Representative's requested service award is reasonable and does not constitute improper preferential treatment .......................................................................... 23

b.    Attorneys' fees requested are within the range of those regularly accepted by Sixth Circuit Courts......................... 24

c.    No agreements exist that require disclosure under Rule 23(e)(3) ................................................................. 25

d.    The Settlement Agreement treats proposed class members equitably............................................................... 25

c.    The Proposed Settlement Administrator Will Provide Adequate Notice............................ 26

VI. CONCLUSION................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................11

*Armstrong*,
    616 F.2d .................................................................................................20

*Bailey v. Great Lakes Canning, Inc.*,
    908 F.2d 38 (6th Cir.1990) .................................................................... 11

*Bailey v. Verso Corp.*,
    337 F.R.D. 500 (S. D. Ohio Feb. 22, 2021)...........................................18

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) .................................................................15

*Bronson v. Board of Educ. of City School Dist.*,
    604 F. Supp. 68 (S.D. Ohio 1984) .................................................. 11, 20

*Daffin v. Ford Motor Co*.,
    458 F.3d 549 (6th Cir. 2006) .................................................................14

*Davidson v. Henkel*,
    302 F.R.D. 427 (E.D. Mich. 2014) .......................................................14

*Frnks v. Froger Co.*,
    649 F. 2d 1216 (6th Cir. 1981) .............................................................11

*Fulton-Green et al. v. Accolade, Inc.*,
    No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019)..................................21, 22

*Garner v. Properties* Management*, LLC v. City of Inkster*,
    333 F.R.D. 614 (E.D. Mich. Jan. 17, 2020).........................14, 16, 18, 23

*Greenberg v. Procter & Gamble Co.*,
    724 F.3d 713 (6th Cir. 2013) .................................................................25

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) .................................................................25

*In re American Med. Sys., Inc*.,
    75 F.3d 1069 (6th Cir. 1996) .................................................................16

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d .......................................................................................20

*In re Cardizem CD Antitrust Litig*.,
    218 F.R.D. 508 (E.D.Mich.2003) .........................................................24

*In re Dry Max Pampers Litigation*,
    724 F.3d 713 (6th Cir. 2013) ...........................................................23, 24

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019) ..............................13

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F.Supp.2d 1040 (S.D. Tex. 2012) ...................................................................13

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) ........................................................................17

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016).................................19

*In re Target*
   309 F.R.D. 482 (D. Minn. 2015)...........................................................................13

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ................................................................................13

*Kenney et al. v. Centerstone of America, Inc. et al.*,
   Case No. 3:20-cv-01007 (M.D. Tenn. Aug., 9, 2021) .....................................13, 21

*Laskey v. UAW*,
   638 F.2d 954 (6th Cir. 1981) ................................................................................19

*Levell v. Mondanto Research Corp.*,
   191 F.R.D. 543 (S.D. Ohio Feb. 7, 2000) .............................................................11

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp 2d 766 (S.D. Ohio March 31, 2010)..................................................24

*Mowery et al. v. Saint Francis Healthcare System*,
   No. 1:20-cv-00013 (E.D. Mo. December 22, 2020) ..............................................22

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..............................................................................................26

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
   546 F. Supp. 1 (N.D. Ohio April 27, 1982) ......................................................... 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..............................................................................................26

*Radcliffe v. Experian Info. Sols.*,
   715 F.3d 1157 (9th Cir. 2013) ..............................................................................25

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ................................................................................17

*Robinson v. Shelby Cty. Bd. of Educ.*,
   566 F.3d 642 (6th Cir. 2009) ................................................................................19

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) ................................................................................17

*Senter v. General Motors Corp.*,
   532 F. 2d 511 (6th Cir. 1976) ..........................................................................16, 19

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   259 F.R.D. 262 (E.D. Ky. 2009) ......................................................................18, 19

*Todd v. Retail Concepts, Inc.*,
   2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ..................................................11

*United States v. Jones & Laughlin Steel Corp.,*
    804 F.2d 348 (6th Cir. 1986) ...............................................................................11
*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)...............................................................................................14
*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir.1983) ...........................................................................11, 26

## **OTHER AUTHORITIES**

1 Newberg on Class Actions § 3:26 (5th ed. 2018) ...............................................14, 18

## **RULES**:

Fed. R. Civ. P. 23(e) ..............................................................................................26

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................12

Fed. R. Civ. P. 23(e)(2)......................................................................................12, 18

Fed. R. Civ. P. 23(e)(2)(A)-(D) .............................................................................18

Fed. R. Civ. P. 23(e)(3).........................................................................................18

Fed. R. Civ. P. 23(b)(3).........................................................................................17

Plaintiff Jennifer Bandy ("Plaintiff") submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.        INTRODUCTION

This case arises from a data incident that Plaintiff alleges compromised her protected health information, and the protected health information of the putative class. Plaintiff alleges that between March 20, 2023 through March 24, 2023, a third party gained access to Defendant TOC Enterprises, Inc. d/b/a/ Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A.'s ("Defendant" or "TOC") computer systems (the "Data Incident"). Following the Data Incident, Defendant sent notice to the approximately 46,679 individuals whose Private Information was potentially impacted. Plaintiff alleges TOC failed to secure and safeguard the personal identifying information ("PII") and personal health information ("PHI") that it collected and maintained from Plaintiff and Class Members (collectively the "Private Information"), and failed to provide adequate and timely notice of the breach. TOC denies each and every claim and contention that Plaintiff alleges against it, and Defendant denies all charges of wrongdoing or liability.

After extensive arm's length negotiations, the Parties have reached a settlement that is fair, adequate, and reasonable. The agreement provides for monetary relief to be paid by TOC to eligible claimants of a Class who submit valid and timely claims that includes all natural persons residing in the United States who were sent notice that their Private Information was potentially impacted in the Data Incident. The monetary relief provides for reimbursements of up to $1,500 and $4,000 of documented ordinary and extraordinary expenses, respectively, provided claimed expenses are reasonably tied to the Data Incident and the claimant provides supporting documentation. Defendant has further agreed to automatically provide an additional one-year of

single-bureau monitoring services to the Automatic Credit Monitoring Subclass, without the need for these Subclass members to make any affirmative claim for this benefit. Class Members who did not previously enroll in the credit monitoring services offered by Defendant following the Data Incident may submit a claim to accept two-years of single-bureau credit monitoring and identity theft restoration services.

Accordingly, and relying on the following memorandum of points and authorities, the Declaration of Plaintiff's Counsel Danielle L. Perry and attached exhibits filed herewith, Plaintiff respectfully requests the Court preliminarily approve the Parties' Settlement Agreement and enter an order that:

(1)     Certifies the Settlement Class for purposes of settlement only;

(2)     Preliminarily approves the Settlement Agreement ("Agr."), attached as Exhibit 1 to the Declaration of Danielle L. Perry in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, filed herewith;

(3)     Appoints Proposed Settlement Class Counsel, Danielle L. Perry and Lisa A. White of Mason LLP, as Class Counsel;

(4)     Appoints Plaintiff Jennifer Bandy as Class Representative;

(5)     Approves a customary short form notice to be mailed to Settlement Class Members (the "Short Notice") in a form substantially similar to that attached as Exhibit A to the Settlement Agreement;

(6)     Approves a customary long form notice ("Long Notice") to be posted on the settlement website in a form substantially similar to the one attached as Exhibit B to the Settlement Agreement;

2

(7)     Directs Notice to be sent to the Settlement Class in the form and manner proposed as set forth in the Settlement Agreement and Exhibits A and B thereto;

(8)     Appoints Epiq Class Action and & Claims Solutions, Inc. ("Epiq" or "Settlement Administrator'") to serve as the Settlement Administrator;

(9)     Approves the use of a claim form substantially similar to that attached as Exhibit C to the Settlement Agreement;

(10)    Sets a hearing date and schedule for final approval of the settlement and consideration of Settlement Class Counsel's motion for award of fees, costs, expenses, and service awards.

## II.     CASE SUMMARY

### a.  Initial Investigation and Communications

TOC is a comprehensive medical and surgical treatment center of bone, joint and soft tissue disorders, with locations across Tennessee including in Knoxville, Louisville, Sevierville, Lenoir City, and Oak Ridge. Declaration of Danielle L. Perry in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Perry Dec."), ¶ 11. Plaintiffs allege that in the ordinary course of receiving treatment and health care services from TOC, patients are required to provide certain sensitive personal and private information to TOC. *Id.*

Plaintiff alleges the Data Incident, which occurred between March 20 and March 24, 2023, occurred when unauthorized person(s) accessed TOC computer systems that may have contained Private Information of class members. *Id.* ¶ 10. Such Private Information may have included at least, names, contact information, dates of birth, diagnosis and treatment information, provider names, dates of service, cost of services, prescription information, and/or health insurance

information. *Id.* ¶ 11. Approximately 46,679 individuals may have been impacted in the Data Incident. *Id.* ¶ 12.

### b. Procedural Posture and History of Negotiations

Plaintiff Lynn Cadenas filed her original complaint on behalf of herself, ad next friend and on behalf of M.C., a minor, and on behalf of similarly situated individuals in the United States District Court for the Middle District of Tennessee on June 12, 2021, bringing causes of action for: (1) Negligence; (2) Negligence *Per Se*; (3) Breach of Implied Contract; (4) Violations of the Tennessee Consumer Protection Act; (5) Unjust Enrichment; and (6) Violation of the ITDA. *Id.* ¶ 13. On July 24, 2024, Plaintiff Cadenas filed her Amended Class Action Complaint, adding Jennifer Bandy as a second named plaintiff. *Id.* ¶ 14.

Soon after, the Parties began discussing the potential for early Settlement after an exchange of information necessary to evaluate the strengths and weaknesses of Plaintiff's claims and TOC's defenses. *Id.* ¶ 15. After multiple rounds of non-collusive, arms' length negotiations, conducted between opposing counsel by both email and over the telephone, the Parties eventually agreed to central terms of a settlement. *Id.* ¶ 16. On August 16, 2023, the Parties filed a Joint Notice of Settlement and Request to Set Briefing Schedule, informing the Court that a Settlement had been reached and that the Parties intended to file the final agreement and motion for preliminary approval by early October 2023. *Id.* ¶ 17. The Parties continued negotiations and drafting efforts, seeking an extension of their early October deadline on September 27, 2023. *Id.* ¶ 18. On September 28, 2023, the Court granted the Parties' request, setting the deadline to file the Settlement Agreement and Motion for Preliminary Approval for October 24, 2023. *Id.* ¶ 19. Over the following weeks, the Parties diligently drafted, negotiated, and finalized the settlement agreement, notice forms, and agreed upon a Settlement Administrator. *Id.* ¶ 20. A copy of the final

4

and executed Settlement Agreement ("Agr."), is attached as Exhibit 1 to the Declaration of Danielle L. Perry in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, filed herewith.

Despite the grounds that Plaintiff believes exist for her claims, which TOC denies, none are certain to resolve in Plaintiff's favor on the merits. Further litigation would subject Plaintiff to numerous risks, including the risk that she and the other Class Members get no recovery at all. The Settlement provides significant relief to Members of the Class and Plaintiff strongly believes that it is favorable for the Settlement Class, fair, reasonable, adequate, and worthy of preliminary approval. *Id.* at ¶ 9.

## III.    SUMMARY OF SETTLEMENT

### a.    Settlement Class

The Settlement Class includes all natural persons residing in the United States who were sent notice that their Private Information was potentially impacted in the Data Incident. Agr. ¶ 1.6. The Class specifically excludes (i) Defendant and its employees, officers, and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

### b.    Settlement Benefits

The settlement negotiated on behalf of the Class provides for two separate forms of relief. *See generally, id.* § 2.  First, TOC will provide direct monetary relief to class members who submit timely and valid claims for reimbursement of actual documented ordinary and extraordinary expenses stemming from the Data Incident, as well as reimbursement for up to three hours of lost

time spent dealing with the Data Incident. *Id.* ¶ 2.1. Second, TOC will provide one-bureau credit monitoring and identity theft restoration services for up to two years for Settlement Class Members who submit timely and valid claims. *Id.* ¶ 2.3. For those Class Members who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident, these Automatic Credit Monitoring Class Members will be automatically provided one year of additional 1-bureau credit monitoring services, without the need to make any affirmative claim. *Id.*

*1. Monetary Relief*

The monetary relief available to Settlement Class Members who submit timely and Valid claims are divided into two separate categories. *Id*. ¶ 2.1. The first category is to provide expense reimbursement for documented out-of-pocket expenses up to $1,500 per Class Member, incurred as a result of the Data Incident including: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; (vii) unreimbursed losses due to fraud or identity theft; and (viii) any other charge or loss reasonably related to the Data Incident incurred by Class Members between March 20, 2023 and the Claims Deadline. *Id.* ¶ 2.1.1. Expenses must be supporting documentation to be compensable. *Id.* Also included within the first category, Class members can also collect payment for up to three hours of lost time, compensable at a rate of $20 per hour, so long as at least one full hour was spent dealing with the Data Incident. *Id.* ¶ 2.1.2. Lost time is compensable without any documentation: Class Members must simply attest to the amount of time spent dealing with affects or mitigating potential effects of the Data Incident and provide a description of the time spent. *Id.*

The second category allows Class Members to collect compensation for up to $4,000 per Class Member for documented extraordinary out-of-pocket losses that (i) are actual, documented,

6

and unreimbursed; (ii) were more likely than not caused by the Data Incident; (iii) occurred between March 20, 2023 to the Claims Deadline; and (iv) are not already covered by one more of the above-referenced reimbursed expenses. *Id.* ¶ 2.1.3.

### 2. *Credit Monitoring and Identity Theft Restoration Services*

The Settlement also provides for Credit Monitoring and Identity Theft Restoration Services to be offered to Settlement Class Members. *Id*. 2.3. Class Members who did not previously enroll in the credit monitoring services offered by Defendant following the Data Incident are eligible to submit claims for two years of one-bureau identity theft protection and credit monitoring services. *Id.* Class Members who previously enrolled in the monitoring services offered by Defendant will *automatically* be provided and additional year of one-bureau credit monitoring services without the need to make any affirmative claim. *Id.*

The Settlement Benefits are are not subject to any aggregate cap, meaning every Class Member that submits a valid claim will receive relief. *Id.* ¶ 2.4.

The Settlement benefits are provided in exchange for a release of claims ("Released Claims") as set forth in the Settlement Agreement. *Id.* § 6.

### c. **The Notice and Claims Process**

### 1. *Notice*

The Parties agreed to use Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Settlement Administrator"), as the Notice Specialist and Settlement Administrator in this case. *Id.* ¶ 1.29. The Notice and Claim Forms negotiated by the Parties are clear and concise, and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *Id.* at Exs. A, B, and C; *see also* Declaration of Cameron R. Azari, Esq. on Notice Program and Notices

("Admin. Dec."), ¶¶ 28-29 filed herewith. The current and agreed upon Notice Plan calls for direct and individual Notice to be provided to Settlement Class Members via mail.. Admin Dec. ¶ 22. Prior to mailing the Notice, the Settlement Administrator will check all mailing addresses against the National Change of Address database, and will certify the address via the Coding Accuracy Support System to ensure the accuracy of zip codes. *Id*. ¶ 23. The Settlement Administrator will conduct address searches and re-mail any Notices that are returned undeliverable, and for which updated address can be found through the USPS or by using a third-party lookup service. *Id.* ¶ 24.

The Settlement Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, contact information for Class Counsel, TOC's Counsel and the Administrator. *Id.* ¶ 25. Settlement Class Members will be able to submit claim forms through the Settlement Website or by mail. *Id.* The Settlement Administrator will also make a toll-free help line available to provide Settlement Class Members with additional information about the settlement. *Id*.

### 2. *Claims*

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide if they would like to opt-out or object. Class Members will have 90 days from the Notice Date to submit or postmark their claim form to the Settlement Administrator, either by mail or online. Agr. ¶ 1.4; Admin Dec. ¶ 30. The Settlement Administrator is given the authority to assess the validity of claims, and to ask for additional documentation. Agr. ¶ 2.5.2.

### 3. *Requests for Exclusion*

8

Any Class Member who wishes to opt-out of the settlement will have until 60 days after the Notice Date to postmark and mail written notice that they would like to be excluded from the Settlement Class. *Id.* ¶ 1.20. The Request for Exclusion must be individually signed and must clearly manifest an individual's intent to be excluded from the Class. *Id*. ¶ 4.1. All Persons who submit valid and timely notices of their intent to be excluded from the Class shall not receive any Settlement benefits of, and will not be bound by, the terms of the Settlement Agreement.

### 4. *Objections*

Similarly, Class Members who wish to object to the terms of the Settlement Agreement must do so in writing, and file their objection with the Clerk of Court and serve copies on Class Counsel and counsel for Defendant within 60 days from the Notice Date. *Id.* ¶ 1.19. The written objection must include (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years. *Id.* ¶ 5.1.

### d. Proposed Attorneys' Fees and Plaintiff Service Awards

The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to Representative Plaintiff, until after the substantive terms of the settlement had been agreed upon, other than that TOC would pay reasonable attorneys' fees, costs, expenses, and a service award to Representative Plaintiff as may be agreed to by TOC and Proposed Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. Perry Dec. ¶ 23.

Subject to Court approval, Defendant has agreed not to object to a request by Proposed Class Counsel for attorneys' fees, inclusive of any costs and expenses of the Litigation in an amount not to exceed $150,000 to Proposed Class Counsel. Agr. ¶ 7.2. Defendant has also agreed not to object to requests for an incentive award in the amount of $2,000 to each Named Plaintiff. *Id.* ¶ 7.3. The incentive award is meant to compensate Plaintiff for her efforts which include maintaining contact with counsel, assisting in the investigation of the case, reviewing and approving pleadings, remaining available for consultation throughout settlement negotiations, and for answering counsel's many questions. Perry Dec. ¶ 26. The amount(s) of any award of attorneys' fees, costs, and expenses, and the incentive award to Plaintiff, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Agr. ¶ 7.5. If awarded by the Court, Defendant shall pay the attorneys' fees, costs, expenses, and incentive awards to Plaintiff within 30 days after the Effective Date. *Id.* ¶ 7.4. Plaintiff will file a motion seeking an award of attorneys' fees, costs, and incentive awards at least 14 days prior to the deadline for Settlement Class Members to request exclusion or object to the Settlement. Perry Dec. ¶ 27.

**IV.     LEGAL AUTHORITY**

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual Plaintiff—or the class—could hope to obtain. *See Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio April 27, 1982) *citing Frnks v. Froger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981). A class action may not be settled however without notice of the proposed settlement to all settlement class members and the approval of the court. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-621 (1997), *citing* Fed. R. Civ. P. 23(e). Before granting final approval of a class action settlement, the Court must follow a three-step process. *Levell v. Mondanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio Feb. 7, 2000) *citing Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir.1990); *United States v. Jones & Laughlin Steel Corp.,* 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983); *Bronson v. Board of Educ. of City School Dist.,* 604 F. Supp. 68, 71 (S.D. Ohio 1984); *see also Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 *2 (M.D. Tenn. Aug. 22, 2008). First, the Court must preliminarily approve the proposed settlement. Second, class members must be given notice of the proposed settlement. *Id.* And finally, a hearing must be held, after which the Court will decide whether the proposed settlement is fair, adequate, and reasonable, and consistent with the public interest. *Id.* This case is before the Court at the first, or preliminary approval, stage.

At the first, or preliminary approval stage, Federal Rule 23 requires courts to conduct a preliminary fairness determination, front-loading scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. A Settlement should be preliminarily approved and notice should be provided to the class where parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed

settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

## V.   ARGUMENT

### a.  The Settlement Class Should be Certified.

Plaintiff here seeks certification of a Settlement Class consisting of all natural persons residing in the United States who were sent notice that their Private Information was potentially impacted in the Data Incident. *See* Agr. ¶ 1.6. The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods.*, 521 U.S. at 620. In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only

class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Under Rule 23 a party seeking certification of a class must demonstrate four things: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 850 (6th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). Additionally, pursuant to Rule 23(b), Plaintiff must also demonstrate that common questions of law or fact predominate over individualized issues, making the class device the superior mechanism for resolving the case. *Id*. at 851.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including most recently the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see, also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F.Supp.2d 1040 (S.D. Tex. 2012). Similar data breach cases have also been certified by this court. *See for example, Kenney et al. v. Centerstone of America, Inc. et al.,* Case No. 3:20-cv-01007 (M.D. Tenn. Aug., 9, 2021) (granting final approval of settlement and final certification of settlement class). Because the

proposed settlement class meets all of the class action requirements under the Federal Rules of Civil Procedure, this Court should certify the class for purposes of settlement.

i. <u>The proposed Class is sufficiently numerous.</u>

While there is no fixed point where the numerosity requirement is met, as a general rule where a class contains at least forty (40) individuals, courts have recognized a rebuttable presumption that joinder is impracticable. *Davidson v. Henkel,* 302 F.R.D. 427, 436 (E.D. Mich. 2014) (noting that the modern trend is to require a minimum of 21 to 40 class members). Numbering approximately 46,679 individuals, the proposed settlement class is substantial in size, and easily satisfies Rule 23's numerosity requirement. *See Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006) (recognizing that "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement"). Joinder of the approximately 46,679 individuals whose personal information was potentially impacted by the Data Incident is clearly impracticable—thus the numerosity prong is satisfied.

ii. <u>Questions of law and fact are common to the Class</u>.

The threshold for meeting the commonality requirement of Fed. R. Civ. P. 23 is a low one. Commonality looks to the questions of law or fact among the class members generally, and seeks "to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also* 1 Newberg on Class Actions § 3:26 (5th ed. 2018). Not all questions of law and fact raised need to be common across the class. *Garner v. Properties Management, LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. Jan. 17, 2020). Class claims must be based on at least one common allegation "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Here, Plaintiff can demonstrate numerous common issues exist. Plaintiff alleges TOC had a policy and practice of failing to adequately safeguard the records of Plaintiff and Class Members. They further allege that TOC's data security safeguards at the time of the breach were common across the Class, and those applied to one Class Member did not differ from those safeguards applied to another.

Other specific common questions at issue include:

- Whether TOC unlawfully maintained, and/or disclosed Plaintiff's and proposed Class Members' Personal Information;

- Whether TOC failed to promptly notice Plaintiffs and Class members of the Data Incident;

- Whether TOC failed to maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident; and

- Whether TOC's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiff in her complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiff has met the commonality requirement of Rule 23.

          iii.  <u>Plaintiff's claims and defenses are typical to those of the Settlement Class.</u>

A plaintiff will satisfy the typicality requirement of Rule 23 where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). "In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are 'aligned with those of the represented

group,' such that 'in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner Properties & Management, LLC v. City of Inkster,* 333 F.R.D. 614, 623 (E.D. Mich. Jan. 17, 2020) (*quoting In re American Med. Sys., Inc*., 75 F.3d 1069, 1082 (6th Cir. 1996)).

Plaintiff's claims are typical of those of other Class Members because they and the other Class Members allege their Private Information was misused, disclosed, and/or inadequately safeguarded by TOC. Plaintiff alleges that, in her view, Defendant did not take reasonable measures to prevent the Data Incident and caused her and other Class Members to live with the anxiety of not knowing if and when their most private health information could be made public. These claims arise out of the same legal theory and are typical of those of other Class Members, who were also sent notice of the Data Incident.

iv. <u>Plaintiff will adequately protect the interests of the Class.</u>

The adequacy requirement of Rule 23 is satisfied where (1) the representative has common interests with unnamed members of the class, and (2) it appears that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter v. General Motors Corp.*, 532 F. 2d 511, 525 (6th Cir. 1976).

Here, Plaintiff is a member of the Class who alleges the same injuries and seeks, like other Class Members, both reimbursement for costs incurred due to the Data Incident and protections from potential negative consequences of the Data Incident. As such, her interests and the interests of her counsel are not inconsistent with those of other Class Members.

Further, counsel for Plaintiff has decades of combined experience as vigorous class action litigators, extensive experience in data breach litigation in particular, and are well suited to advocate on behalf of the Class. *See* Perry Dec. ¶ 2-9, Ex. B.

v. <u>Common issues predominate over individualized ones, and class treatment is superior to individualized litigation.</u>

Common questions of law and fact predominate here because the most significant aspects of the case arise out of a common nucleus of operative facts and can be resolved for all Settlement Class Members. *See* Fed. R. Civ. P. 23(b)(3); *see also Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352-53 (6th Cir. 2011). By the very class definition, each of the Settlement Class Members' private information was potentially impacted by the same Data Incident for which TOC sent notice. As such, any claims of Class Members arise out of the same common nucleus of operative facts—the Data Incident.

To meet the superiority prong for class certification, a plaintiff must demonstrate that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Fed. R. Civ. P. 23(b)(3). Implied within the requirement of superiority is a need that all class members be ascertainable, so that they can be notified of the action and any settlement. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.,* 863 F.3d 460, 466 (6th Cir. 2017). Here, because all claims on behalf of Plaintiff and approximately 46,679 Class Members arise out of the same Data Incident, and TOC has *already* provided notice of the Data Incident, Class Members are easily ascertainable, and a class action is vastly superior to attempting to litigate each Class Member's claims individually.

**b. The Settlement Terms are Fair, Adequate, and Reasonable.**

At the preliminary approval stage, the Court does not finally decide whether the settlement is fair and reasonable. *See In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 337 (N.D. Ohio 2001) (explaining that preliminary approval "is only the first step" in a process which may or may not result in final approval of a settlement). Rather, the Court must

simply determine whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections. *See Newberg on Class Actions* § 13:10 (5th ed.).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is likely to be found "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

At the preliminary approval stage, courts need not make a final determination of every factor. While the exact factors examined at the preliminary approval stage vary, approval has historically been granted where a settlement (i) has potential for final approval as being fair, adequate and reasonable; (ii) is the product of serious, informed, arms-length non-collusive negotiations; (iii) has no obvious deficiencies; (iv) does not improperly grant preferential treatment to Class Representatives; (v) falls sufficiently within the range of possible approval; and (vi) does not disclose grounds to doubt its fairness. *Garner Properties & Management* LLC, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020); *see also Bailey v. Verso Corp.*, 337 F.R.D. 500, 506 (S. D. Ohio Feb. 22, 2021) (noting regular consideration of similar factors on preliminary approval) (internal quotation marks omitted); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262,

270 (E.D. Ky. 2009) (same). Approval of a class settlement is discretionary, and a Court's decision will only be upended upon a showing of an abuse of discretion. *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009); *Laskey v. UAW*, 638 F.2d 954, 957 (6th Cir. 1981)

The Agreement reached by Parties here meets the standards set forth by Federal Rules of Civil Procedure and Courts in this Circuit, and warrants preliminary approval.

i. Class Representatives and Class Counsel have adequately represented the Class.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016). This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, proposed Settlement Class Counsel conducted extensive research regarding the Plaintiff's claims, Defendant, and the Data Incident. Perry Decl., ¶¶ 10-11. As such, and considering counsel's extensive experience in data breach litigation (*see, e.g.,* Perry Decl., ¶¶ 3-9, Ex. 2), the Parties were able to carry out settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

In addition, the adequacy of representation requirement is satisfied because Representative Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. Plaintiff has common interests with unnamed members of the class, and have vigorously represented the interests of the class through qualified counsel. *See Senter v. General Motors Corp.*, 532 F. 2d 511, 525 (6th Cir. 1976). As discussed *supra*, the Plaintiff's claims here are

19

aligned with the claims of the other class members. They thus have every incentive to vigorously pursue the claims of the class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the settlement agreement. Perry Dec. ¶ 26. Further, Plaintiff retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See* Perry Dec. ¶¶ 2-9.

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, proposed Settlement Class Counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Perry Decl. ¶ 84. Proposed Settlement Class Counsel also believe that the benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

ii. The settlement was the result of informed, non-collusive, arms'-length negotiations by experienced counsel.

Courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements. Indeed, settlements are regularly granted approval where a court find that they are the product of informed, non-collusive, arm's-length negotiations. *Bronson v. Bd. of Educ. Of City School District of City of Cincinnati*, 604 F. Supp. 68, 78 (S.D. Ohio June 22, 1984) (approving settlement where there was no hint of collusion in the negotiating process).

The settlement here is the result of intensive arm's-length and non-collusive negotiations between attorneys experienced in both class actions generally, and data security cases in particular. *See* Perry Dec. ¶ 28, Ex. 2. The agreement was only finalized after weeks of initial negotiations on

central terms, and months of going back and forth on the precise terms of the agreement, and accompanying notice and claim forms. Perry Dec., ¶¶ 16-20. As such, this factor weighs in favor of preliminary approval.

iii. <u>The Settlement Agreement provides significant relief for real harms, as well as protection against the risk of further harm for Settlement Class Members.</u>

<em>1. The Settlement provides substantial relief for the class.</em>

The settlement guarantees Class Members who submit valid claims relief for lost time or out-of-pocket expenses which they attest incurred were as a result of the Data Incident. Not only can Plaintiff and Class Members be reimbursed for costs they incurred related to the Data Incident but they can also receive up to two-years of Credit Monitoring and Identity Restoration Services, upon submitting a valid Claim, that includes identity theft insurance designed to protect them if their information is misused in the future. Documented expense reimbursement will run up to $1,500 per person for standard expenses delineated in the Settlement agreement and up to $4,000 per person for other documented extraordinary expense reimbursements also described in the Settlement Agreement, all offered without being subject to any sort of aggregate cap. Agr. § 2.

This Settlement Agreement includes terms within the range of those approved by other courts for similar data security incidents. *See, e.g., Kenney et al. v. Centerstone of America, Inc. et al.,* Case No. 3:20-cv-01007 (M.D. Tenn. Aug., 9, 2021) (granting final approval of settlement providing up to $500 in ordinary expense reimbursements, $1,500 in extraordinary expense reimbursements, and up to two years of credit monitoring services); *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070 (Dist. Nebr. Sept. 15, 2021) (granting final approval of settlement providing up to $300 in ordinary expense reimbursement, $3,000 in extraordinary expense reimbursements, and one-year of credit monitoring services); *Fulton-Green et al. v. Accolade, Inc.*,

E.D. Pa. No. 2:18-cv-00274, Order Granting Final Approval, ECF No. 39, (E.D. Pa. Sept. 24, 2019) (granting approval of data breach class action settlement providing for expense reimbursement up to $1,500 per class member, and increased cyber security measures of undisclosed worth for two years following the Data Incident); *Mowery et al. v. Saint Francis Healthcare System,* No. 1:20-cv-00013 (E.D. Mo. December 22, 2020) (approving settlement in healthcare data breach matter providing for up to $180 in reimbursements per class member, as well as one-year credit monitoring and identity theft restoration services).

This proposed settlement provides full, fair, and adequate compensation for any actual injuries sustained related to the Data Incident. Moreover, the substantial and immediate benefits achieved by the Settlement avoid the risks, uncertainties, and delays of continued litigation. If this lawsuit were to continue, Plaintiff and Class Members would face a number of difficult challenges, including surviving a motion to dismiss, obtaining class certification, and maintaining certification through trial and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this Lawsuit. This is another indication that the proposed Settlement is fair, reasonable, and adequate and should be approved.

> 2. *The method of processing claims and distributing relief is clear and efficient.*

As described in above, all Class Members will have 90-days from the Notice Date to submit a claim for ordinary and/or extraordinary expense reimbursements, as well as for credit monitoring and identity theft restoration services. The Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. After the Settlement is approved and the time for any appeal has passed, the Settlement Administrator will also be responsible for processing and transmitting Settlement Class Member

payments and providing enrollment codes for those Class Members who made a claim for credit monitoring services.

As such, the Settlement provides for effective processing and distribution of relief and should be approved.

> 3. *The terms of proposed attorneys' fees and service awards are reasonable.*

While prior to the final approval hearing Plaintiff will submit a formal motion for approval of attorneys' fees, costs, and Plaintiff's service awards, below is a brief summary and explanation of why the fees, costs and service award Plaintiff intends to seek are reasonable and should be approved. In short, the fees and service awards requested are reasonable, well withing the range of those accepted by Sixth Circuit Courts, and should be preliminarily approved.

> a. *The Class Representative's requested service award is reasonable and does not constitute improper preferential treatment.*

While the Sixth Circuit has not explicitly approved the practice of providing service awards (also referred to as "incentive" awards), they are regularly approved to the extent they are not so large as to create a "divergence of interests between the named representatives and the class." *Garner Properties & Management, LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020), citing *In re Dry Max Pampers Litigation*, 724 F.3d 713, 722 (6th Cir. 2013). The Sixth Circuit has raised concern where the named plaintiff's service award leaves them no reason to pay any attention to the mechanism by which the class members must make their recovery. "The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the

remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 722 (6th Cir. 2013). Still, courts in this Circuit regularly award service awards to named plaintiffs. *See, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp 2d 766, 787 (S.D. Ohio March 31, 2010) (awarding each of three class representatives $5,000).

The Class Representative here will seek an incentive award of $2,000 for her contributions to the class. Perry Dec., ¶ 25. The incentive award is meant to compensate Plaintiff for her efforts which include maintaining contact with counsel, assisting in the investigation of the case, reviewing and approving pleadings, remaining available for consultation throughout settlement negotiations, and for answering counsel's many questions. *Id.* ¶ 26. The award that she will request does not run afoul of Sixth Circuit guidance: it is *less than* the up to $3,000 recoverable by each Class Member, and the Class Representatives will still have to go through the same claims process as the Class Members to receive reimbursement for expenses and Identity Theft Protection Services. As such, this factor weighs in support of preliminary approval.

> b. *Attorneys' fees requested are within the range of those regularly accepted by Sixth Circuit Courts.*

Plaintiff here intends to seek $150,000 in attorneys' fees and costs—a small percent of the uncapped benefit negotiated for the class. This falls well within the ordinary range for attorneys' fees in approved class action settlements. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532–33 (E.D.Mich.2003) (noting "the ordinary range for attorneys' fees [is] between 20%-30%"). Moreover, distribution of fees, costs, and service awards will not occur until 30-days after the Settlement has been approved by the Court and all time for appeals has passed. As such, and as

will be explained in greater detail in Plaintiff's separate motion for fees, costs, and service awards, the requested attorneys' fees do not provide justification for denial of preliminary approval.

### c. No agreements exist that require disclosure under Rule 23(e)(3).

There are no additional agreements that require identification and/or examination under Rule 23(e)(3). As such, this factor weighs in favor of preliminary approval.

### d. The Settlement Agreement treats proposed class members equitably.

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Each Class Member will have 90-days from the Notice Date to make a claim for Settlement benefits based on the amount of expenses they have incurred and time they have spent related to the Data Incident. Moreover, any class member can make a claim for up to 24-months of credit monitoring and identity restoration services. As such, each Class Member has an equal opportunity to benefit from the Settlement.

Moreover, Plaintiff's modest requested incentive award of $2,000 represents a fraction of the amount that *any* Class Member can make a claim for. Thus, there is no concern that they may be being treated unequitable or compromising the interest of the class for personal gain:

> The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs. The members' incentives are thus aligned.

*Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003), citing *Radcliffe v. Experian Info. Sols*., 715 F.3d 1157, 1161 (9th Cir. 2013). Accordingly, this factor weighs in favor of settlement approval.

### c. The Proposed Settlement Administrator Will Provide Adequate Notice.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be "the best practicable under the circumstances" and sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, (1950); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.1983).

The Notice and Claim Forms negotiated by the Parties are clear and concise, and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. Agr. Exs. A, B, and C; *see also* Admin Dec. ¶ 28. Settlement Class Members will receive direct and individual notice of the settlement via first class mail. Admin Dec. ¶ 22. After receiving the Class Member Information, the Settlement Administrator will cross check all addresses with the National Change of Address database and send summary notice to each of the approximate 46,679 Class Members. *Id*. Where postcards are returned undeliverable, the Settlement Administrator will process the undeliverable mail, conduct address searches and re-mail the postcards. *Id.* ¶ 32. The Settlement Administrator will also maintain a settlement website on which Class Members can obtain additional information regarding the case, access case documents, review answers to frequently asked questions, access notice documents, and submit claim forms. *Id.* ¶ 25. Additionally, the Settlement Administrator will maintain a toll-free telephone line to handle any client inquiries and fulfill all additional notice packet requests. *Id.* ¶ 26.

Plaintiff has negotiated a notice program that is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. The combination of the direct mailing to each and every Class Member as well as the 90 days provided to make a claim ensures maximum participation. As such this Court should approve the notice program negotiated by Plaintiff.

## VI.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable settlement that will provide Class Members with both significant monetary and equitable relief. For and the above reasons, Plaintiff respectfully requests this Court grant Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and allow Notice to be sent to the Class.

Dated: October 27, 2023

By: /s/ *Danielle L. Perry*
**MASON LLP**
Lisa A. White (TN Bar No. 026658)
Danielle L. Perry (*admitted pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, D.C. 20015
Phone: (202) 429-2290
lwhite@masonllp.com
dperry@masonllp.com

*Counsel for Plaintiff and the Proposed Class*