## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JENNIFER BANDY, on behalf of all others similarly situated,** | ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00598** |
| | ) | |
| **TOC ENTERPRISES, INC d/b/a Tennessee Orthopaedic Clinics, a division of TENNESSEE ORTHOPAEDIC ALLIANCE, P.A.,** | ) ) ) ) | **District Judge Aleta A. Trauger** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DECLARATION OF DANIELLE L. PERRY IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

I, Danielle L. Perry, being competent to testify, make the following declaration based on my personal knowledge, and where stated, upon information and belief. I declare:

1.     I am currently a partner of the law firm Mason LLP. I am one of the lead attorneys for Plaintiff and seek appointment as Class Counsel for the proposed Settlement Class. I submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so. A true and correct copy of the Settlement Agreement ("Agreement") is attached hereto as **Exhibit 1**. Included with the Agreement are the following sub-exhibits:

        **Exhibit A:**     **Short Form Notice**

        **Exhibit B:**     **Long Form Notice**

        **Exhibit C:**     **Claim Form**

        **Exhibit D:**     **Proposed Preliminary Approval Order**

2. The attorneys seeking to be named Class Counsel in this matter—me, and Lisa White—have extensive experience in class action litigation generally and data breach class action litigation in particular.

3. I have been licensed to practice law in California since 2013 and in the District of Columbia since 2016. I am also a member of the bars of numerous federal district courts and the U.S. Circuit Court for the Fifth Circuit, and have nearly a decade of litigation and class action experience. I am admitted to practice *pro hac vice* in this court and am counsel of record for this matter.

4. Mason LLP Attorneys have served as Lead Counsel, Co-Counsel or Class Counsel on dozens of class actions ranging from defective construction materials, (i.e. defective radiant heating systems, siding, shingles, and windows), to misrepresented and recalled products (e.g., dog food, prenatal vitamins), and environmental incidents (the Exxon Valdez, BP Oil Spill).

5. These cases include: *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, MDL No. 2887, No. 2:19-md-02887 (D. Kan.) (final approval granted Oct. 2021), where Mason LLP served as court-appointed Co-Lead Counsel; *In re DevaCurl Litigation*, Master File No. 1:20-cv-01234-GHW (S.D.N.Y.) (final approval granted January 3, 2022), where Mason LLP served as court-appointed Co-Lead Counsel; *Cox v. Shell Oil Co.*, No. 18844, 1995 WL 775363 (Ch. Ct. Tenn., July 31, 1995) (defective polybutylene pipe; $950 million settlement); *Hobbie v. RCR Holdings, II, LLC*, No. 10-113, MDL No. 2047 (E.D. La. filed April 20, 2010) (354 unit condominium built with Chinese Drywall; settlement for complete remediation at cost of $300 million); Adams v. Fed. Materials, No. 5:05-CV-90-R, 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006) (350 owners of commercial and residential property whose structures were built with defective concrete; $10.1 million settlement); *In re MI Windows & Doors Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001-DCN, MDL No. 2333, 2015 WL 4487734 (D.S.C. July 23, 2015) (defective windows; claims made settlement for over 1 million homes); *In re Synthetic Stucco Litig.*, No. 5:96-CV-287-BR(2), 2004 WL 2881131 (E.D.N.C. May 11, 2004) (settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million); *Posey v. Dryvit Sys., Inc.*, No. 17,715-IV, 2002 WL 34249530 (Tenn. Cir. Ct. Oct. 1, 2002) (Co-Lead Counsel;

national class action settlement provided cash and repairs to more than 7,000 claimants); *Galanti v. Goodyear Tire & Rubber Co*., No. 03CV00209, 2004 WL 6033527 (D.N.J. Nov. 17, 2004) (Class counsel; defective radiant heating systems; $330 million settlement); and *In re Zurn Pex Prod. Liab. Litig*., No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) (Plaintiffs' Executive Committee; +$20 million claims made settlement).

6.     With respect to privacy cases, Mason LLP is presently litigating over two dozen cases across the country involving privacy violations, data breaches, and ransomware attacks.

7.     Mason LLP served as Court-appointed Liaison Counsel in *In re U.S. Off. of Pers. Mgmt. Data Security Breach Litig*., 266 F. Supp. 3d 1 (D.D.C. 2017). Attorneys at Mason LLP were also Co-Lead Counsel in *In re Dep't of Veterans Aff. (VA) Data Theft Litig*., No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PPI of 28.5 million military veterans and active duty personnel; $20 million settlement fund) and court-appointed Lead Counsel in *In re Google Buzz Privacy Litig*., No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising for unauthorized disclosure or personal information).

8.     It is noteworthy that in just the last couple of years, I (either individually or as a member of my firm) have served as class counsel and/or worked successfully to obtain Final Approval in numerous data breach class actions including:

  a.   *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (hospital data breach class action; final approval granted Sept. 2020);

  b.   *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (hospital data breach class action; final approval granted Dec. 2020);

  c.   *Baksh v. Ivy Rehab Network, Inc.*, Case No. 7:20-cv-01845-CS (S.D.N.Y.) (data breach class action settlement; final approval granted Feb. 2021);

  d.   *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (data breach class action settlement valued at over $7 million; final approval granted Feb. 2021);

e. *Kenney et al. v. Centerstone of America, Inc.*, Case No. 3:20-cv-01007 (M.D. Tenn.) (data breach class action settlement involving over 63,000 class members; final approval granted August 2021);

f. *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (data breach case involving 360,000 patients; final approval granted Aug. 2021);

g. *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb) (data breach settlement, final approval granted Sept. 2021);

h. *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach class action involving approximately 109,000 individuals, final approval granted Sept. 2021);

i. *Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (data breach class action settlement, final approval granted Oct. 2021);

j. *Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (data breach class action involving 112,000 people; final approval granted Oct. 2021);

k. *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel, final approval granted Nov. 2021);

l. *Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed class counsel in data breach case involving 55,652 people; final approval granted April 2022);

m. *Dekenipp v. Gastroenterology Consultants*, Case No. 202161470 (295th Judicial District for Harris County, Texas) (appointed class counsel, final approval granted October 2022).

n. *Colston et al. v. Envision Credit Union,* Case No. 2022CA1476 (2d. Jud. Cir. For Leon County, Fl.) (appointed class counsel, final approval granted Apr. 2023);

o. *Nelson et al. v. Connexin Software Inc., d/b/a Office Practicum*, Case No. 2:22-cv-04676 (E.D. Penn.) (appointed to the Plaintiffs' Steering Committee, Apr. 2023);

p. *Rodriguez v. Mena Regional Health System,* Case No. 2:23-cv-02002 (W.D. Ark.) (appointed Co-Lead Counsel, Apr. 2023);

q. *In re Flagstar December 2021 Data Security Incident Litigation,* Case No. 22-cv-11385 (E.D. Mich.) (appointed to the Plaintiffs' Executive Committee, May 2023);

r. *In re NCB Management Services, Inc. Data Breach Litigation,* Case No. 23-1236 (E.D. Pa.) (appointed to the Plaintiffs' Steering Committee, June 2023).

9.      My experience, and that of my partner and firm, is more fully described in Mason LLP's Firm Resume, attached hereto as **Exhibit 2**.

## Initial Investigation and Communications

10.     Between March 20, 2023 and March 24, 2023, cybercriminals gained access to certain of Defendant TOC Enterprises, Inc. d/b/a/ Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A.'s ("Defendant" or "TOC") computer systems which contained highly confidential and protected patient information.

11.     Our extensive preliminary investigation showed the following facts, alleged more fully in Plaintiffs' operative complaint, which I describe upon information and belief:

a. TOC is a comprehensive medical and surgical treatment center of bone, joint and soft tissue disorders, with locations across Tennessee including in Knoxville, Louisville, Sevierville, Lenoir City, and Oak Ridge.[1]

b. In the ordinary course of receiving treatment and health care services from TOC, patients are required to provide certain sensitive personal and private information to TOC.

c. On or about May 19, 2023, TOC first notified the U.S. Department of Health and Human Services Office for Civil Rights ("HHS") of this breach on or about May 19, 2023, using a place-holder indicating that "500" individuals were affected.[2]

d. On or about July 13, 2023, almost two months later, TOC sent Notice Letters ("Notice Letters") to victims of the Data Incident informing them that third-party criminals had gained unauthorized access to their confidential personal

---

[1] Amended Complaint ("Am. Compl."), ECF No. 16 at ¶¶ 1, 16.
[2] Am. Compl. ¶ 2.

identifying information ("PII") and/or personal health information ("PHI") (together "Private Information" or "PII").[3]

e.  According to the Notice Letters, the PII included at least, names, contact information, dates of birth, diagnosis and treatment information, provider names, dates of service, cost of services, prescription information, and/or health insurance information.[4]

12.  TOC's investigation showed an estimated 46,679 patients' data was potentially impacted.

## Procedural Posture

13.  Plaintiff Lynn Cadenas filed her original complaint on behalf of herself, ad next friend and on behalf of M.C., a minor, and on behalf of similarly situated individuals in the United States District Court for the Middle District of Tennessee on June 12, 2021, bringing causes of action for: (1) Negligence; (2) Negligence *Per Se*; (3) Breach of Implied Contract; (4) Violations of the Tennessee Consumer Protection Act; (5) Unjust Enrichment; and (6) Violation of the ITDA.[5]

14.  On July 24, 2024, Plaintiff Cadenas filed her Amended Class Action Complaint, adding Jennifer Bandy as a second named plaintiff.

15.  Soon after, the Parties began discussing the potential for early Settlement after an exchange of information necessary to evaluate the strengths and weaknesses of Plaintiffs' claims and TOC's defenses.

16.  Through informal discovery used to inform settlement negotiations, the Parties determined that neither Lynn Cadenas's nor M.C.'s Private Information was impacted in the Data Incident.

17.  On October 25, 2023, Plaintiffs filed a motion for leave to file a second amended complaint, leaving Jennifer Bandy as the only remaining Plaintiff in the case. On October 26, 2023, the Court granted Plaintiffs' motion.

---

[3] *Id*. ¶ 3.
[4] *Id*. ¶ 4.
[5] Complaint, ECF No. 1, ¶¶ 97-160.

<u>**History of Negotiations**</u>

18.     After multiple rounds of non-collusive, arms' length negotiations, conducted between opposing counsel by both email and over the telephone, the Parties eventually agreed to central terms of a settlement.

19.     On August 16, 2023, the Parties filed a Joint Notice of Settlement and Request to Set Briefing Schedule, informing the Court that a Settlement had been reached and that the Parties intended to file the final agreement and motion for preliminary approval by early October 2023.

20.     The Parties continued negotiations and drafting efforts, seeking an extension of their early October deadline on September 27, 2023.

21.     On September 28, 2023, the Court granted the Parties' request, setting the deadline to file the Settlement Agreement and Motion for Preliminary Approval for October 24, 2023.

22.     Over the following weeks, the Parties diligently drafted, negotiated, and finalized the settlement agreement, notice forms, and agreed upon a Settlement Administrator.

<u>**The Settlement Agreement**</u>

***Settlement Benefits***

23.     The settlement negotiated on behalf of the Class provides for two separate forms of relief: (1) direct monetary relief to class members for reimbursement of actual ordinary and extraordinary expenses stemming from the Data Incident; and (2) credit monitoring and identity theft restoration services for up to two years for Settlement Class Members.[6]

***Attorneys' Fees, Costs, and Plaintiff's Incentive Award***

24.     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to the Representative Plaintiff, until after the substantive terms of the settlement had been agreed upon, other than that TOC would pay reasonable attorneys' fees, costs, expenses, and an incentive award to the Representative Plaintiff as may be agreed to by TOC and

---

[6] *See* Agr., ¶ 2.

Proposed Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court.

25.     TOC has agreed to pay attorneys' fees and litigation costs in the amount of up to $150,000, as approved by the Court.[7]

26.     The Settlement Agreement also provides for a reasonable incentive award to Plaintiff in the amount of $2,000.[8]

27.     The incentive award is meant to compensate Plaintiff for her efforts which include maintaining contact with counsel, assisting in the investigation of the case, reviewing and approving pleadings, remaining available for consultation throughout settlement negotiations, and for answering counsel's many questions.

28.     Plaintiff will seek the Court's approval of the requested attorneys' fees, costs and incentive award through separate motion, to be filed prior to the deadline for Settlement Class members to request exclusion or object to the settlement.

29.     Despite the grounds that exist for each of Plaintiff's claims, which TOC denies, none are certain to resolve in Plaintiff's favor on the merits. Further litigation would subject Plaintiff to numerous risks, including the risk that they and the other Class Members get no recovery at all. The Settlement was vigorously negotiated at arms' length by counsel with extensive experience in data breach class actions. It provides significant relief to Members of the Class and Counsel for Plaintiff strongly believes that it is favorable for the Settlement Class, fair, reasonable, adequate, and worthy of preliminary approval.

*     *     *     *

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Davidsonville, MD on this 27th day of October 2023.

/s/ Danielle L. Perry
Danielle L. Perry (*admitted pro hac vice*)
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640

---

[7] Agr., ¶ 7.2.
[8] Agr., ¶ 7.3.

Washington, D.C. 20015
Phone: (202) 429-2290
dperry@masonllp.com

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER BANDY, on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:23-cv-00598 |
| TOC ENTERPRISES, INC d/b/a Tennessee Orthopaedic Clinics, a division of TENNESSEE ORTHOPAEDIC ALLIANCE, P.A., | ) ) ) ) ) | District Judge Aleta A. Trauger |
| Defendant. | ) ) ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of the date of final execution, is made and entered into by and among the following Settling Parties (as defined below): Jennifer Bandy ("Plaintiff"), individually and on behalf of the Class Members (as defined below), by and through her counsel of record MASON LLP ("Plaintiff's Counsel"); and (ii) TOC Enterprises Inc. d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance ("Defendant"), by and through its counsel of record, BAKER HOSTETLER LLP. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## INTRODUCTION

This settlement resolves a putative nationwide consumer class action brought by Plaintiff on behalf of herself and a purported class of similarly situated individuals.

# I.    PROCEDURAL BACKGROUND

This case arises from the alleged compromise of personally identifying information ("PII") and/or protected health information ("PHI") (collectively, "Private Information") following a data security incident Defendant experienced around March 2023 (the "Data Incident"). Plaintiff and Class Members (as defined below) include current and former patients of Defendant whose Private Information was potentially impacted in the Data Incident. Following the Data Incident, Defendant sent notice to the individuals whose Private Information was potentially impacted in the Data Incident.

In response, on July 13, 2023, Plaintiff Cadenas filed a putative class action, captioned *Cadenas, individually and as next friend on behalf of M.C. (minor) v. TOC Enterprises, Inc.*, No. 3:23-cv-00598 (M.D. Tenn.). On July 24, 2023, Plaintiff Cadenas filed an amended complaint, adding Plaintiff Jennifer Bandy. On October 25, 2023, Plaintiffs amended their complaint, removing Plaintiff Cadenas individually, and on behalf of her minor child (M.C.) as Plaintiffs, captioned *Bandy v. TOC Enterprises, Inc., d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A.*, No. 3:23-cv-00598 (M.D. Tenn.). In her Second Amended Complaint, Plaintiff alleged individually and on behalf of a putative nationwide class that, as a result of the Data Incident, Plaintiff and Class Members have suffered or will suffer numerous injuries, including (1) diminution in value of their Personal Information; (2) financial costs incurred mitigating the imminent risk of identity theft; (3) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (4) delay in receipt of tax refund monies; and (5) the cost of future identity theft monitoring for the Class. Plaintiff, individually and on behalf of the proposed nationwide class, asserted claims for (i) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; (5) violation of the Tennessee Consumer

Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*; and (6) violation of the ITDA under Tenn. Code Ann. § 47-18-2104.

Recognizing the risk and expenses of prolonged litigation, the Parties agreed to pursue settlement negotiations. After detailed negotiations, the Parties reached a resolution of this matter on a class wide basis. The agreed resolution and settlement is memorialized in this Settlement Agreement.

Pursuant to the terms identified below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against the Released Parties (as defined below) relating to the Data Incident and this Litigation, by and on behalf of Plaintiff and Class Members.

## II.     CLAIMS OF PLAINTIFF AND BENEFITS OF SETTLING

Plaintiff believes that the claims asserted in the Litigation, as set forth in the Second Amended Complaint (the "Complaint"), have merit. Plaintiff and Proposed Class Counsel (as defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendant through motion practice, trial, and potential appeals. Plaintiff has also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Class Counsel are highly experienced in class-action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue in cybersecurity incident litigation in general and in this Litigation in particular. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Class.

## III. DENIAL OF WRONGDOING AND LIABILITY

Defendant denies each and all of the claims and contentions alleged against it in the Litigation. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Defendant has concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Defendant has considered the uncertainty and risks inherent in any litigation. Defendant has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## <u>TERMS OF SETTLEMENT</u>

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiff, individually and on behalf of the Class Members, Proposed Class Counsel, and Defendant that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Class, and the Class Members, except those Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

1. **Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1 "Agreement" or "Settlement Agreement" means this agreement.

1.2    "Automatic Credit Monitoring Subclass" means the approximately 934 Persons who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident.

1.3    "Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.4    "Claims Deadline" means the postmark and/or online submission deadline for Claims, which shall be 90 days after the Notice Date (as defined below). The Claims Deadline shall be clearly set forth in the order granting Preliminary Approval of the settlement, as well as in the Notice and Claim Form.

1.5    "Claim Form" means the form utilized by the Class Members to submit a Settlement Claim (as defined below) for reimbursement. The Claim Form will be substantially in a form as shown in **Exhibit C** attached hereto, which will be available on both the Settlement Website (as defined below) and in paper format, if specifically requested by a Class Member.

1.6    "Class" means all natural persons residing in the United States who were sent notice that their Private Information was potentially impacted in the Data Incident. The Class specifically excludes (i) Defendant and its employees, officers, and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.7    "Class Member(s)" means any Person or Persons who falls within the definition of the Class.

1.8 "Court" means the United States District Court for the Middle District of Tennessee.

1.9 "Data Incident," means the data security incident experienced by Defendant between March 20, 2023 and March 24, 2023, that involved an unauthorized third party accessing some of Defendant's systems and potentially impacting the Private Information of Plaintiff and Class Members.

1.10 "Effective Date" means the date when the Settlement Agreement becomes Final (as defined below), which is 31 days after the Court's granting the Final Approval Order assuming no appeals have been filed. If an appeal is filed, the Effective Date shall be 31 days from when the appeal is decided and a Judgment is entered in this case.

1.11 "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court; (ii) the Court has entered a Judgment (as defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or incentive award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.12 "Final Approval Order" is the order through which the Court grants final approval of class action settlement and finds that this settlement is fair, reasonable, and adequate.

1.13 "Judgment" means a judgment rendered by the Court, substantially in the form as shown in **Exhibit E**.

1.14    "Incentive Award" shall have the meaning ascribed to it as set forth in ¶ 7 of this Settlement Agreement. The Incentive Award requested in this case will be $2,000 to Plaintiff as Class Representative, subject to Court approval, and will be in addition to any other Settlement benefits Plaintiff may receive.

1.15    "Litigation" means this case, Case No. 3:23-cv-00598, pending in this Court against Defendant.

1.16    "Long Notice" means the long form notice of settlement to be posted on the Settlement Website, substantially in the form as shown in **Exhibit B** hereto.

1.17    "Notice" means the notice form that will be issued or made available to Class Members, including the Short Form Notice, Long Form Notice, Settlement Website, and IVR line apprising Class Members about the settlement.

1.18    "Notice Date" means 60 days after the entry of the Preliminary Approval Order, which is the date that Notice will be sent to Class Members.

1.19    "Objection Date" means the date by which Class Members must mail their objection to the settlement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Objection Date shall be 60 days after the Notice Date.

1.20    "Opt-Out Date" means the date by which Class Members must mail their requests to be excluded from the Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date shall be 60 days after the Notice Date.

1.21    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative,

trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.22    "Plaintiff" and/or "Class Representative" means Jennifer Bandy.

1.23    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Class, substantially in the form as shown in **Exhibit D** hereto. The Settling Parties will prepare a mutually agreeable Preliminary Approval Order to be filed contemporaneously with Plaintiff's Motion for Preliminary Approval.

1.24    "Proposed Class Counsel" and/or "Class Counsel" means Lisa A. White and Danielle L. Perry of the law firm MASON LLP.

1.25    "Related Entities" means Defendant and its respective past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of its and their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in this Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.26    "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; violations of all state statutory claims;

negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Class Member against any of the Released Parties based on, relating to, concerning or arising out of the Data Incident. Released Claims shall not include the right of any Class Member, Proposed Class Counsel, or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Class Members who have timely excluded themselves from the Class.

      1.27    "Released Parties" means collectively, Defendant and the Related Entities and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, including joint ventures and joint venture partners, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers.

      1.28    "Settlement Administration" means the processing and payment of claims received from Class Members by the Settlement Administrator (as defined below).

1.29 "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Settlement Administrator"), a company experienced in administering class action claims generally and specifically those of the type provided for and made in data-breach litigation.

1.30 "Settlement Website" means the website described in ¶ 3.2(c).

1.31 "Settling Parties" means, collectively, Defendant and Plaintiff, individually and on behalf of the Class.

1.32 "Short Notice" means the content of the mailed notice to the Class Members, substantially in the form as shown in **Exhibit A** attached hereto. The Short Notice will direct recipients to the Settlement Website and inform Class Members, among other things, of the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing (as defined below).

1.33 "Unknown Claims" means any of the Released Claims that any Class Member, including Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Parties that, if known by him or her, might have affected his or her settlement with, and release of, the Released Parties, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiff intends to and expressly shall have, and each of the other Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 *et seq*., Montana Code Ann. § 28-1-1602; North Dakota Cent.

Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Class Members, including Plaintiff, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiff expressly shall have, and each other Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.34 "United States" as used in this Settlement Agreement includes all 50 states, the District of Columbia, and all territories.

1.35 "Valid Claims" means timely submitted or postmarked Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or dispute resolution process described in ¶ 2.5.

2. **Settlement Benefits**

2.1 Expense Reimbursement.

2.1.1 *Documented Ordinary Out-of-Pocket Expenses.* All Class Members who submit a Valid Claim using the Claim Form are eligible for the following documented ordinary out-of-pocket expenses, not to exceed $1,500 per Class Member, that were incurred as a result of the Data Incident: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges

(only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; (vii) unreimbursed losses due to fraud or identity theft; and (viii) any other charge or loss reasonably related to the Data Incident incurred by Class Members between March 20, 2023 and the Claims Deadline. To receive reimbursement for the above-referenced out-of-pocket expenses, Class Members must submit a Valid Claim, including documentation supporting their claims, to the Settlement Administrator.

2.1.2    *Reimbursement for Attested Lost Time.* Class Members are also eligible to receive reimbursement for up to three hours of lost time spent dealing with the Data Incident, calculated at the rate of $20 per hour, but only if at least one (1) full hour was spent dealing with the Data Incident. Class Members may receive up to three hours of lost time if the Class Member: (i) attests that any claimed lost time was spent responding to issues raised by the Data Incident; and (ii) provides a checkbox-style description. Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses.

2.1.3    *Documented Extraordinary Out-of-Pocket Expenses.*    Class Members are also eligible to receive reimbursement for documented extraordinary out-of-pocket losses, not to exceed $4,000 per Class Member for documented monetary loss that (i) is actual, documented, and unreimbursed; (ii) was more likely than not caused by the Data Incident; (iii) occurred between March 20, 2023 to the Claims Deadline; and (iv) is not already covered by one or more of the above-referenced reimbursed expenses. Class Members must also provide documentation that he or she made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

2.1.4   Class Members seeking reimbursement under ¶¶ 2.1 or 2.3 must complete and submit a Claim Form to the Settlement Administrator, postmarked or submitted online on or before the 90th day after the deadline for the commencement of notice to Class Members as set forth in ¶ 3.2(d) (the "Claims Deadline"). The Notice to the Class will specify this deadline and other relevant dates described herein. The Claim Form must be verified by the Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief. Notarization shall not be required.  Failure to provide supporting documentation for Out-of-Pocket Losses (other than reimbursement of attested lost time), referenced above, as requested on the Claim Form, shall result in denial of a claim.

2.2   <u>Limitation on Reimbursable Expenses</u>. Nothing in this Settlement Agreement shall be construed as requiring Defendant to provide, and Defendant shall not be required to provide, for a double payment for the same loss or injury that was reimbursed or compensated by any other source. No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

2.3   <u>Identity Theft Protection and Credit Monitoring.</u> Class Members may submit a Claim to accept two years of free credit monitoring and identity theft restoration services. The services shall provide one-bureau monitoring for valid Claims. The Automatic Credit Monitoring Subclass will be automatically provided one year of additional 1-bureau credit monitoring services without the need to make any affirmative claim. This one year of credit monitoring is in addition to any credit monitoring previously offered by Defendant following the Data Incident.

2.4   <u>Aggregate Cap</u>. There is no aggregate cap applicable to the Expense Reimbursements described in section 2.1 or the Identity Theft and Credit Monitoring described in

section 2.3. Defendant shall pay all valid claims for Expense Reimbursements and pay for all valid claims for Identity Theft and Credit Monitoring.

2.5    Dispute Resolution for Claims.

2.5.1    The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (i) the claimant is a Class Member; (ii) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.1; and (iii) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Data Incident. The Settlement Administrator may, at any time, request from the claimant, in writing, additional information as the Settlement Administrator may reasonably require in order to evaluate the claim, *e.g.,* documentation requested on the Claim Form, and required documentation regarding the claimed losses. The Settlement Administrator's initial review will be limited to a determination of whether the claim is complete and plausible. For any claims that the Settlement Administrator determines to be implausible, the Settlement Administrator will submit those claims to the Settling Parties (Danielle Perry shall be designated to fill this role for all Plaintiff). If, upon meeting and conferring, the Settling Parties disagree as to the Claim validity, then the Claim shall be referred back to the Settlement Administrator for final determination on the Claim's validity.

2.5.2    Following timely receipt of additional information pursuant to a request by the Settlement Administrator under ¶ 2.4.1, the Settlement Administrator shall have 10 days to accept or reject the Claim. If, after review of the Claim and all documentation submitted by the claimant, the Settlement Administrator determines that such Claim is valid, then the Claim shall be paid. If the Claim is not valid because the claimant has not provided the information requested by the

14

Settlement Administrator, then the Settlement Administrator may reject the Claim without any further action. A defect in one Claim shall not cause rejection of any other Valid Claim submitted by the claimant.

2.5.3    Class Members shall have 10 days from receipt of the approval of a Claim that provides a payment that deviates from the losses described on the Claim Form to accept or reject the Claim.

2.6    <u>Settlement Expenses.</u> All costs for notice to the Class as required under ¶¶ 3.1 and 3.2, Costs of Settlement Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of dispute resolution described in ¶ 2.5, shall be paid by Defendant separate and apart from any other benefits provided to Plaintiff and the Class.

2.7    <u>Class Certification.</u> The Settling Parties agree, for purposes of this settlement only, to the certification of the Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Class provided for herein, will be vacated and the Litigation shall proceed as though the Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case, or action, as to which all of their rights are specifically preserved.

## 3.    Order of Preliminary Approval and Publishing of Notice of Fairness Hearing

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Class Counsel shall submit this Settlement Agreement to the Court, and Proposed Class Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a

mutually agreeable Preliminary Approval Order in the form substantially similar to **Exhibit F** in both terms and cost, requesting, *inter alia:*

a)  certification of the Class for settlement purposes only pursuant to ¶ 2.7;

b)  preliminary approval of the Settlement Agreement as set forth herein;

c)  appointment of Proposed Class Counsel as Class Counsel;

d)  appointment of Plaintiff as Class Representative;

e)  approval of a customary form of Short Notice to be mailed to Class Members in a form substantially similar to **Exhibit A**, attached hereto.

f)  approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to **Exhibit B**, attached hereto, which, together with the Short Notice, shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, the requested attorneys' fees, and the date, time and place of the Final Fairness Hearing;

g)  approval of the Claim Form to be used by Class Members to make a Claim in a form substantially similar to **Exhibit C**, attached hereto; and

h)  appointment of Epiq as the Settlement Administrator.

The Short Notice, Long Notice, and Claim Form have been reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Settling Parties. Immaterial revisions to these documents may be made prior to dissemination of Notice. Any changes to the Preliminary Approval Order, Short Notice, Long Notice, and Claim Form that do not materially

16

affect the substance of the Settlement Agreement that the Court may require will not invalidate this Settlement Agreement

     3.2     Defendant shall pay for providing notice to the Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Settlement Administration. Any attorneys' fees, costs, and expenses of Plaintiff's Counsel, and an incentive award to the Class Representative, as approved by the Court, shall be paid by Defendant as set forth in ¶ 7 below. These costs, fees, and expenses shall be paid by Defendant separate and apart from all other benefits provided to Plaintiff and the Class. Notice shall be provided to Class Members by the Settlement Administrator as follows:

     a)     *Class Member Information*: Within 14 days of entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the name and physical address of each Class Member (collectively, "Class Member Information") that Defendant possess.

     b)     The Class Member Information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the Settlement as provided in this Agreement, or to provide all data and information in its possession to the Settling Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

     c)     *Settlement Website:* Prior to the dissemination of the Notice, the Settlement Administrator shall establish the Settlement Website (www.TOCsettlement.com) that will inform Class Members of the terms of this Settlement Agreement, their

rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; and (v) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically and shall have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address and send hardcopy documents to a designated Post Office box established by the Settlement Administrator.

d) *Short Notice:* Within 60 days of entry of the Preliminary Approval Order, and subject to the requirements of this Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide Notice to the Class as follows:

- Via postcard to the postal address that Defendant provided to the Settlement Administrator. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of Class Members through the USPS National Change of Address database to update any change of address on file with the USPS;

- in the event that a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is not valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Notice to the

forwarding address within 7 days of receiving the returned Short Notice;

- in the event that subsequent to the first mailing of a Short Notice, and at least 14 days prior to the Opt-Out Date and the Objection Date, a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Short Notice within 7 days of receiving such information. This shall be the final requirement for mailing.

- The date of the first mailing of the Short Notice shall be deemed the "Notice Date" for purposes of calculating the opt-out and objection deadlines, and all other deadlines that flow from the notice commencement date.

e)      Publishing, on the Notice Date, the Short Notice, the Claim Form and the Long Notice on the Settlement Website as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the claim period;

f)    A toll-free help line shall be made available to provide Class Members with additional information about the settlement and to respond to Class Members' questions. The Settlement Administrator also will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request to Class Members; and

g)    Contemporaneously with seeking Final approval of the Settlement, Proposed Class Counsel and Defendant shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.3    The Short Notice, Long Notice, and other applicable communications to the Class may be adjusted by the Settlement Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. The notice program shall commence within 60 days after entry of the Preliminary Approval Order and shall be completed within 74 days after entry of the Preliminary Approval Order.

3.4    Proposed Class Counsel and Defendant's counsel shall request that after Notice is completed, the Court hold a hearing (the "Final Fairness Hearing"), in person or via remote or telephonic means to be posted on the Settlement Website, and grant final approval of the settlement set forth herein, and request that the Final Fairness Hearing occur on a date that is convenient for the Court and is at least 135 days after entry of the Preliminary Approval Order.

**4.    Opt-Out Procedures**

4.1    Each Person wishing to opt-out of the Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. The written notice must clearly manifest a Person's intent to be excluded from the

Class. To be effective, written notice must be postmarked no later than 60 days after the date on which the notice program commences pursuant to ¶ 3.2(d).

4.2     All Persons who submit valid and timely notices of their intent to be excluded from the Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any Settlement benefits of, and will not be bound by, the terms of this Settlement Agreement. All Persons falling within the definition of the Class who do not submit a valid and timely request to be excluded from the Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within 10 days after the Opt-Out Date, there have been requests for exclusions totaling more than 40 individuals, Defendant shall have the right to terminate the Settlement Agreement in its entirety.

**5.     Objection Procedures**

5.1     Each Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in

which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court and contain the case name and docket number *Bandy v. TOC Enterprises, Inc.*, No. 3:23-cv-00598 (M.D. Tenn.) no later than 60 days from the date on which notice program commences pursuant to ¶ 3.2(d), and served concurrently therewith upon Proposed Class Counsel, Lisa A. White and Danielle L. Perry of the law firm MASON LLP, 5335 Wisconsin Ave NW, Suite 640; and counsel for Defendant, Casie D. Collignon of BAKER HOSTELLER LLP at 1801 California Street, Suite 4400, Denver, CO 80202.

5.2     Any Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.     Releases**

6.1     Upon the Effective Date, each Class Member who has not timely and validly excluded himself or herself from the Settlement, including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against all Released Parties. Further, upon the Effective Date, and to the fullest extent permitted by law, each Class Member who has not timely and validly excluded himself or herself from the Settlement, including Plaintiff, shall, either directly,

indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2     Upon the Effective Date, Defendant shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiff, each and all of the Class Members, Proposed Class Counsel and Plaintiff's Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims. Any other claims or defenses Defendant may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3     Notwithstanding any term herein, neither Defendant nor its Related Person, shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Plaintiff, each and all of the Class Members, Proposed Class Counsel, and Plaintiff's Counsel.

6.4     Nothing in this ¶ 6 shall preclude any action to enforce the terms of this Settlement Agreement by Plaintiff, Class Members, Proposed Class Counsel, or Defendant.

**7.     Plaintiff's Counsel's Attorneys' Fees, Costs, and Expenses; Incentive Award to Plaintiff**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to Plaintiff, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that Defendant would not object to a request for reasonable attorneys' fees, costs, expenses, and incentive award to Plaintiff as may be ordered by the Court. Defendant and Proposed Class Counsel then negotiated and agreed to the provisions described in ¶¶ 7.2 and 7.3. Defendant shall pay any attorneys' fees, costs, expenses and/or incentive award to Plaintiff, as provided for in ¶¶ 7.2 and 7.3, separate and apart from any benefits provided to Class Members and the costs of notice and Settlement Administration.

7.2     Subject to Court approval, Defendant has agreed not to object to a request by Proposed Class Counsel for attorneys' fees, inclusive of any costs and expenses of the Litigation in an amount not to exceed $150,000 to Proposed Class Counsel. Proposed Class Counsel, in their sole discretion, shall allocate and distribute any amounts of attorneys' fees, costs, and expenses awarded by the Court among Class Counsel.

7.3     Subject to Court approval, Defendant has agreed not to object to requests for an incentive award in the amount of $2,000 to the Named Plaintiff.

7.4     If awarded by the Court, Defendant shall pay the attorneys' fees, costs, expenses, and incentive award to Plaintiff, as set forth above in ¶¶ 7.2, 7.3, and 7.4, within 30 days after the Effective Date. Proposed Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiff's Counsel and incentive award to Plaintiff consistent with ¶¶ 7.2 and 7.3.

7.5    The amount(s) of any award of attorneys' fees, costs, and expenses, and the incentive award to Plaintiff, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Plaintiff shall file any motion seeking an award of attorneys' fees, costs, and expenses, and the incentive award to Plaintiff at least 14 days prior to the Objection Date. These payments will not in any way reduce the consideration being made available to the Class as described herein.

7.6    No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or incentive award ordered by the Court to Proposed Class Counsel or Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.    Administration of Claims**

8.1    The Settlement Administrator shall administer and calculate the claims submitted by Class Members under ¶ 2.1. Proposed Class Counsel and Defendant shall be given reports as to both claims and distribution and have the right to review and obtain supporting documentation to the extent necessary to resolve settlement administration issues. The Settlement Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth in ¶ 2.5. Defendant shall pay in full all claims deemed to be Valid Claims.

8.2    Checks for Valid Claims shall be mailed and postmarked within 60 days of the Effective Date. Class Members may choose to be paid via electronic payment, pre-paid credit card, or check.

8.3    All Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or

otherwise expressly allowed by law or the Settling Parties' written agreement, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4     No Person shall have any claim against the Settlement Administrator, claims referee, Defendant, Released Parties, Proposed Class Counsel, Plaintiff, Plaintiff's Counsel, and/or Defendant's counsel based on distributions of benefits to Class Members.

### 9.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)      Defendant has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)      the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.11.

9.2     If all conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Class Counsel and counsel for Defendant mutually agree in writing to proceed with the Settlement Agreement.

9.3      Within 10 days after the Opt-Out Date, the Settlement Administrator shall furnish to Proposed Class Counsel and to Defendant's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement or the releases set forth in ¶¶ 6.1, 6.2, and 6.3 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms: (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or incentive award shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Defendant shall be obligated to pay amounts already billed or incurred for costs of notice to the Class, and Settlement Administration, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## 10.     Miscellaneous Provisions

10.1     The Settling Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement; and (iii) agree to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that

are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth in the Settlement Agreement.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Settlement Agreement and/or the Judgment in any action related to the Data Incident that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5    The Settlement Agreement, including all exhibits hereto, contains the entire understanding between Defendant and Plaintiff to settle this matter and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Defendant and Plaintiff in connection with the settlement of this matter. Except as otherwise provided herein, each party shall bear its own costs. This Agreement supersedes all previous agreements made between Defendant and Plaintiff.

10.6    Proposed Class Counsel, on behalf of the Class, and Defendant's counsel are expressly authorized to take all appropriate actions required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Parties.

10.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.8    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

10.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. No assignment of this Settlement Agreement will be valid without the other party's prior, written permission.

10.10    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the

jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.11    As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.12    All dollar amounts are in United States dollars (USD).

10.13    If a Class Member opts to receive settlement benefits via mailed check, cashing the settlement check is a condition precedent to any Class Member's right to receive settlement benefits. All settlement checks shall be void 90 days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void." If a check becomes void, the Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Class Member's right to receive monetary relief shall be extinguished, and there shall be no obligation to make payments to the Class Member for expense reimbursement or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than 180 days after the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.14    The Settlement Website and IVR line shall be deactivated 180 days after the Effective Date.

10.15    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed by their duly authorized attorneys.

**AGREED TO BY:**

**MASON LLP**

By: /s/

Gary E. Mason
Lisa A. White
Danielle L. Perry
5335 Wisconsin Ave NW, Suite 640
Telephone: (202) 429-2290
E-mail: gmason@masonllp.com
          lwhite@masonllp.com
          dperry@wbmllp.com

**BAKER & HOSTETLER LLP**

By: /s/

Casie D. Collignon
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
Email: ccollignon@bakerlaw.com

**BASS, BERRY & SIMS PLC**
Kathryn H. Walker
Taylor M. Sample
160 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Facsimile: (615) 742-6293

EXHIBIT A

## Postcard Notice

TOC Settlement Administrator
PO Box xxxx
Portland, OR 97xxx-xxxx

Unique ID: <<UniqueID>>

**If you were sent notice of a Data Incident involving Tennessee Orthopaedic Clinics in March 2023, you may be entitled to benefits from a settlement.**

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A settlement has been reached in a class action lawsuit captioned *Bandy v. TOC Enterprises, Inc.,* No. 3:23-cv-00598 (M.D. Tenn.) arising out of a data security incident experienced by TOC Enterprises Inc. d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A. ("Defendant") in March 2023 (the "Data Incident"). You are a Class Member if you were sent notice that your Private Information was potentially impacted in the Data Incident.

**You are receiving this notice because you may be a Class Member.** You may be able to recover the following benefits:

• **Documented Ordinary Out-of-Pocket Expenses:** If you submit a Valid Claim showing that you spent money or incurred losses as a result of the Data Incident, you may be eligible for reimbursement up to $1,500.

• **Attested Lost Time:** Class Members are also eligible to receive reimbursement for up to three hours of lost time spent dealing with the Data Incident, calculated at the rate of $20 per hour.

• **Documented Extraordinary Out-of-Pocket Expenses:** For certain documented monetary losses, you may be eligible for reimbursement up to $4,000. You must submit a Valid Claim to receive these benefits.

• **Identity Theft Protection and Credit Monitoring:** Class Members may submit a Claim to receive two years of free 1-bureau identity theft restoration and credit monitoring services. Individuals who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident will be automatically provided one year of additional 1-bureau credit monitoring services, without the need to make a claim for this Settlement benefit.

The easiest way to submit a claim is at **www.xxxxxxxxxx.com** using your Unique ID on the front of this notice. Your claim must be postmarked or submitted online on or before **Month DD, 20YY**. You can opt-out or object to the Settlement **postmarked** on or before **Month DD, 20YY**. If you do not opt-out, you will remain in the Class and give up the right to sue Defendant and its Related Entities for the legal claims relating to the Data Incident resolved by the Settlement.

The Court will hold a Final Fairness Hearing on **Month DD, 20YY, at _:00 _.m.** At this hearing, the Court will consider whether to approve the Settlement, including the requested attorneys' fees and costs of $150,000 and an Incentive Award of $2,000. The Court will also consider any objections to the Settlement, and listen to people who have asked to speak at the hearing. You may attend the Hearing at your own expense, but it is not necessary.

This notice is a summary. The Settlement Agreement and more information about the lawsuit and Settlement are available at **www.xxxxxxxxxx.com** or by calling toll-free **1-xxx-xxx-xxxx**.

# EXHIBIT B

# If you were notified of a Data Incident involving Tennessee Orthopaedic Clinics in March 2023, you may be entitled to benefits from a settlement.

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against TOC Enterprises Inc. d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A. ("Defendant") arising out of a data security incident Defendant experienced in March 2023 (the "Data Incident"). The Private Information of current and former patients of Defendant was potentially compromised in the Data Incident.

- You are a "Class Member" if you were sent notice that your Private Information was potentially impacted in the Data Incident.

- Under the terms of the Settlement, Class Members may be able to recover the following benefits:

  o **Documented Ordinary Out-of-Pocket Expenses:** If you submit a Valid Claim showing that you spent money or incurred losses as a result of the Data Incident, you may be eligible for reimbursement up to $1,500.

  o **Attested Lost Time:** Class Members are also eligible to receive reimbursement for up to three hours of lost time spent dealing with the Data Incident, calculated at the rate of $20 per hour.

  o **Documented Extraordinary Out-of-Pocket Expenses:** For certain documented monetary losses, you may be eligible for reimbursement up to $4,000. You must submit a Valid Claim to receive these benefits.

  o **Identity Theft Protection and Credit Monitoring:** Class Members may submit a Claim to receive two years of free identity theft restoration and credit monitoring services. Individuals who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident will be automatically provided one year of additional 1-bureau credit monitoring services without the need to make any affirmative claim.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get Settlement benefits is to submit a Claim Form. Individuals who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident will automatically receive one year of additional 1-bureau credit monitoring services, without the need to make a claim for this benefit. | **Submitted or Postmarked on or Before Month Day, 20YY** |
| **EXCLUDE YOURSELF** | Get no Settlement benefits. Keep your right to file your own lawsuit against Defendant about the legal claims in this case. | **Postmarked on or before Month Day, 20YY** |
| **OBJECT TO THE SETTLEMENT** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | **Received on or Before Month Day, 20YY** |
| **DO NOTHING** | Get no Settlement benefits. Be bound by the Settlement. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court must still decide whether to approve the Settlement and the requested attorneys' fees and expenses. No Settlement benefits or payments will be provided unless the Court approves the

Settlement, and it becomes final.

**BASIC INFORMATION**........................................................................................**PAGE 3**
    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is the lawsuit a class action?
    4. Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** ..............................................**PAGE 4**
    5. How do I know if I am part of the Settlement?
    6. Are there exceptions to being included in the Settlement?
    7. What if I am still not sure whether I am part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**................................**PAGE 4**
    8. What does the Settlement provide?
    9. What am I giving up to receive Settlement benefits or stay in the Class?
    10. What are the Released Claims?

**HOW TO GET BENEFITS FROM THE SETTLEMENT**....................................**PAGE 5**
    11. How do I make a claim for Settlement benefits?
    12. What happens if my contact information changes after I submit a claim?
    13. When will I receive my Settlement benefits?

**THE LAWYERS REPRESENTING YOU** ......................................................**PAGE 6**
    14. Do I have a lawyer in this case?
    15. How will Class Counsel be paid?

**OPTING OUT FROM THE SETTLEMENT** ...................................................**PAGE 7**
    16. How do I opt out of the Settlement?
    17. If I opt out, can I get anything from the Settlement?
    18. If I do not opt out, can I sue Defendant for the same thing later?

**OBJECTING TO THE SETTLEMENT**..........................................................**PAGE 7**
    19. How do I tell the Court that I do not like the Settlement?
    20. What is the difference between objecting and asking to be excluded?

**THE FINAL FAIRNESS HEARING** ...........................................................**PAGE 8**
    21. When and where will the Court decide whether to approve the Settlement?
    22. Do I have to attend the Final Fairness Hearing?
    23. May I speak at the Final Fairness Hearing?

**IF YOU DO NOTHING** .........................................................................**PAGE 9**
    24. What happens if I do nothing at all?

**GETTING MORE INFORMATION**    **PAGE 9**    25. How do I get more information?

## BASIC INFORMATION

**Questions? Go to www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

**2**

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 47 of 85 PageID #: 298

## 1. Why is this Notice being provided?

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Aleta A. Trauger of the United States District Court for the Middle District of Tennessee is overseeing this class action. The case is known as *Bandy. v. TOC Enterprises, Inc.,* No. 3:23-cv-00598 (M.D. Tenn.) (the "Litigation"). The person who filed this Litigation is called the "Plaintiff" and/or "Class Representative" and the company sued, TOC Enterprises Inc. d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A., is called the "Defendant."

## 2. What is this lawsuit about?

Plaintiff filed this lawsuit against Defendant, individually, and on behalf of current and former patients of Defendant whose personally identifying information or protected health information ("Private Information") was potentially impacted in the Data Incident.

Plaintiff alleges that in March 2023, as a result of the Data Incident, unauthorized third parties potentially accessed Class Members', Private Information. Plaintiff brought this lawsuit against Defendant alleging claims for: (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; (5) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*; and (6) violation of Tennessee's Identity Theft Deterrence Act under Tenn. Code Ann. § 47-18-2104.

Defendant denies these claims and denies any wrongdoing or liability. No court or other judicial entity has made any judgment or other determination of any wrongdoing by Defendant, or that any law has been violated. Instead, Plaintiff and Defendant have agreed to a settlement to avoid the risk, cost, and time of further litigation.

## 3. Why is the lawsuit a class action?

In a class action, one or more people (called Class Representatives) sue on behalf of all people who have similar claims. Together, all these people are called a class or class members. One court resolves the issues for all class members, except for those class members who timely exclude themselves (opt out) from the class.

The proposed Class Representative in this Litigation is Plaintiff Jennifer Bandy.

## 4. Why is there a Settlement?

Plaintiff and Defendant do not agree about the claims made in this Litigation. The Litigation has not gone to trial, and the Court has not decided in favor of Plaintiff or Defendant. Instead, Plaintiff and Defendant have agreed to settle the Litigation. The Class Representative, Defendant, and their attorneys believe the Settlement is best for all Class Members because of the benefits available to Class Members and the risks and uncertainty associated with continued litigation and the nature of the defenses raised by Defendant.

# WHO IS INCLUDED IN THE SETTLEMENT?

**Questions? Go to www.XXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

3

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 48 of 85 PageID #: 299

| **5.** | **How do I know if I am part of the Settlement?** |

You are a Class Member if you were sent notice that your Private Information was potentially impacted in the Data Incident.

| **6.** | **Are there exceptions to being included in the Settlement?** |

Yes. Excluded from the Class are (i) Defendant and its employees, officers, and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

| **7.** | **What if I am still not sure whether I am part of the Settlement?** |

If you are still not sure whether you are a Class Member, you may go to the Settlement Website at www.XXXXXXXXXXXXXXX.com or call the Settlement Administrator's toll-free number at 1-XXX-XXX-XXXX.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| **8.** | **What does the Settlement provide?** |

If you are a Class Member and you file a timely Valid Claim, you may be eligible for the following benefits:

**Documented Ordinary Out-of-Pocket Expenses**. All Class Members who submit a Valid Claim are eligible for the following documented ordinary out-of-pocket expenses, not to exceed $1,500 per Class Member, that were incurred as a result of the Data Incident:

1) unreimbursed bank fees;
2) long distance phone charges;
3) cell phone charges (only if charged by the minute);
4) data charges (only if charged based on the amount of data used);
5) postage;
6) gasoline for local travel;
7) unreimbursed losses due to fraud or identity theft; and
8) any other charge or loss reasonably related to the Data Incident incurred by Class Members between March 20, 2023, and [**the Claims Deadline**].

To receive reimbursement for the above-referenced out-of-pocket expenses, you must submit a Valid Claim, including documentation supporting your claim.

**Reimbursement for Attested Lost Time**. Class Members are also eligible to receive reimbursement for up to three hours of lost time spent dealing with the Data Incident, calculated at the rate of $20 per hour (but only if at least one full hour was spent dealing with the Data Incident). As part of your Claim Form you must:

1) state that any claimed lost time was spent responding to issues raised by the Data Incident; and

2) provide a description of your time spent.

Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses.

**Documented Extraordinary Out-of-Pocket Expenses**. Class Members are also eligible to receive reimbursement for documented extraordinary out-of-pocket losses, not to exceed $4,000 per Class Member for documented monetary loss that:

1) is actual, documented, and unreimbursed;
2) was more likely than not caused by the Data Incident;
3) occurred between March 20, 2023, to [the Claims Deadline]; and
4) is not already covered by one or more of the above-referenced reimbursed expenses.

Your Documented Extraordinary Out-of-Pocket Expense Claim must include documentation that you made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

**Identity Theft Protection and Credit Monitoring**. Class Members may submit a Claim to accept two years of free 1-bureau credit monitoring and identity theft restoration services.

Class Members who previously enrolled in credit monitoring services offered by Defendant following the Data Incident (the "Automatic Credit Monitoring Subclass"), will be automatically provided one year of additional 1-bureau credit monitoring services without the need to make any claim for this Settlement benefit. This one year of credit monitoring is in addition to any credit monitoring previously offered by Defendant following the Data Incident. The Notice mailed to you will note if you are included in the Automatic Credit Monitoring Subclass.

| **9.  What am I giving up to receive Settlement benefits or stay in the Class?** |
|---|

Unless you exclude yourself (opt out), you are choosing to remain in the Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Defendant or its Related Entities (collectively, the "Released Parties") about the legal issues in this Litigation that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

| **10.  What are the Released Claims?** |
|---|

The Settlement Agreement in Paragraphs 1.25, 1.26, 1.27. 1.33 and Section 6 describes the Released Claims and the Release, in necessary legal terminology, so please read these sections carefully. The Settlement Agreement is available at www.XXXXXXXXXXXXXX.com or in the public Court records on file in this lawsuit. For questions regarding the Release or Released Claims and what the language in the Settlement Agreement means, you can also contact Class Counsel listed in Question 14 for free, or you can talk to your own lawyer at your own expense.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

| **11.  How do I make a claim for Settlement benefits?** |
|---|

To submit a claim for any of the benefits described in Question 8, you must timely submit a Valid Claim. Class Members seeking benefits under the Settlement must complete and submit a Valid Claim to the Settlement Administrator, **postmarked** or submitted online on or before **Month Day, 20YY.** Claim Forms may be submitted online at www.XXXXXXXXXXXXXXX.com

**Questions? Go to www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

5

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 50 of 85 PageID #: 301

or printed from the Settlement Website and mailed to the Settlement Administrator at the address on the form. The quickest way to submit a claim is online. Claim Forms are also available by calling 1-XXX-XXX-XXXX or by writing to:

TOC Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**Claim Forms must be submitted online or postmarked by Month, Day, 20YY.**

| 12. What happens if my contact information changes after I submit a claim? |
| --- |

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXXX or by writing to:

TOC Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

| 13. When will I receive my Settlement benefits? |
| --- |

If you file a timely and Valid Claim, payment will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXXX.com for updates.

## THE LAWYERS REPRESENTING YOU

| 14. Do I have a lawyer in this case? |
| --- |

Yes, the Court has appointed Lisa A. White and Danielle L. Perry of the law firm MASON LLP as Class Counsel to represent you and the Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Litigation.

| 15. How will Class Counsel be paid? |
| --- |

Class Counsel will file a motion asking the Court to award attorneys' fees and costs not to exceed $150,000 to be paid by Defendant. Class Counsel will also ask the Court to approve an Incentive Award of $2,000 for the Class Representative for participating in this Litigation and for her effort in achieving the Settlement. The Court may award less than these amounts. If awarded by the Court, Defendant will pay fees, costs, expenses, and the Incentive Award directly. The fees, costs, expenses and Incentive Award will not reduce the Settlement benefits available to the Class.

Class Counsel's application for attorneys' fees, expenses, and the incentive award will be made available on the Settlement Website at www.XXXXXXXXXXXXXXXXXXXX.com before the deadline for you to comment or object to the Settlement.

## OPTING OUT FROM THE SETTLEMENT

If you are a Class Member and want to keep any right you may have to sue or continue to sue Defendant or its Related Entities on your own based on the claims raised in this Litigation or released

**Questions? Go to www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

**6**

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 51 of 85 PageID #: 302

by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting out" of—the Settlement.

## 16. How do I opt out of the Settlement?

To opt out of the Settlement, you must timely mail written notice of a request for exclusion. The written notice must be:

    (1) Signed,
    (2) Include your name and address, and
    (3) Clearly state that you wish to be excluded from the Class.

The exclusion request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **Month Day, 2023**:

TOC Settlement Administrator
Exclusions
PO Box XXXX
Portland, OR 97XXX-XXXX

**You cannot opt out (exclude yourself) by telephone or by email.**

## 17. If I opt out can I still get anything from the Settlement?

No. If you opt out, you will not be entitled to receive any Settlement benefits, but you will not be bound by any judgment in this case. You can only get Settlement benefits if you stay in the Settlement and submit a Valid Claim.

## 18. If I do not opt out, can I sue Defendant for the same thing later?

No. Unless you opt out, you give up any right to sue any of the Released Parties for the legal claims this Settlement resolves and Releases relating to the Data Incident. You must opt out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

# OBJECTING TO THE SETTLEMENT

## 19. How do I tell the Court that I do not like the Settlement?

If you are a Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested attorneys' fees and expenses. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees and expenses.

To object, you must file timely written notice as provided below no later than **Month Day, 20YY**, stating you object to the Settlement in *Bandy v. TOC Enterprises, Inc.,* No. 3:23-cv-00598 (M.D. Tenn.). The objection must also include all the following additional information:

    (1) Your full name, address, telephone number, and email address (if any);
    (2) Information identifying you as a Class Member, including proof that you are a member of the Class (e.g., copy of notice, copy of original notice of the Data Incident);
    (3) A written statement of all grounds for the objection, accompanied by any legal support you care to submit;
    (4) The identity of all lawyers (if any) representing you;
    (5) A statement as to whether you and/or your lawyer will appear at the Final Fairness Hearing;

**Questions? Go to www.XXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

7

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 52 of 85 PageID #: 303

(6) Your signature and the signature of your duly authorized lawyer or other duly authorized representative (along with documentation setting forth such representation); and

(7) A list, by case name, court, and docket number, of all other cases in which you and/or your lawyer has filed an objection to any proposed class action settlement within the last three (3) years.

To be timely, written notice of an objection in the appropriate form containing the case name and docket number (*Bandy v. TOC Enterprises, Inc.,* No. 3:23-cv-00598) must be filed with the Court by **Month Day, 20YY**, with copies to Class Counsel and Defendant's Counsel at the following addresses:

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL |
|---|---|---|
| Hon. Aleta A. Trauger<br>Fred D. Thompson U.S. Courthouse & Federal Building<br>719 Church Street, Suite 1300<br>Nashville, TN 37203 | Lisa A. White & Danielle L. Perry<br>MASON LLP<br>5335 Wisconsin Ave NW, Suite 640<br>Washington, D.C. 20015 | Casie D. Collignon and<br>BAKER HOSTETLER LLP<br>1801 California Street<br>Suite 4400<br>Denver, CO 80202 |

Any Class Member who fails to comply with the requirements for objecting detailed above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.

### 20. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees and expenses. You can object only if you stay in the Settlement Class (meaning you do not opt out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Class or the Settlement. If you opt out, you cannot object to the Settlement.

# THE FINAL FAIRNESS HEARING

### 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Fairness Hearing on **Month Day, 20YY, at _:00 _.m.** before the Honorable Aleta A. Trauger at the Fred D. Thompson U.S. Courthouse and Federal Building, 719 Church Street, Suite 1300, Nashville, TN 37203 or via Zoom or by phone. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and the Incentive Award to Plaintiff.

If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**Note:** The date and time of the Final Fairness Hearing are subject to change. The Court may also decide to hold the hearing via Zoom or by phone. Any change will be posted at www.XXXXXXXXXXXXXXXX.com.

### 22. Do I have to attend to the Final Fairness Hearing?

Questions? Go to www.XXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX

8

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 53 of 85 PageID #: 304

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to attend the court hearing to speak about it. As long as you file or mail your written objection on time, the Court will consider it.

## 23. May I speak at the Final Fairness Hearing?

Yes, as long as you do not exclude yourself (opt out), you can (but do not have to) participate and speak for yourself at the Final Fairness Hearing. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Section 19 above—and specifically include a statement whether you and your counsel will appear at the Final Fairness Hearing.

# IF YOU DO NOTHING

## 24. What happens if I do nothing at all?

If you are a Class Member and you do nothing, you will not receive any Settlement benefits, and you will give up rights explained in the "Opting Out from the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Released Parties about the legal issues in this Litigation that are released by the Settlement Agreement relating to the Data Incident.

# GETTING MORE INFORMATION

## 25. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXXXXXXX.com, by calling 1-XXX-XXX-XXXX or by writing to:

TOC Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

**Questions? Go to www.XXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**
**9**

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 54 of 85 PageID #: 305

# EXHIBIT C

**Must be postmarked
or submitted online
NO LATER THAN
Month 00, 202X**

TOC SETTLEMENT ADMINISTRATOR
PO BOX XXXX
PORTLAND, OR XXXXX
WWW.XXXXXXXXXX.COM

## TOC Enterprises Data Incident Settlement Claim Form

### SETTLEMENT BENEFITS – WHAT YOU MAY GET

If you were sent notice that your Private Information was potentially impacted in the Data Incident, you are a Settlement Class Member and may submit a claim for the Settlement Benefit(s).

**The easiest way to submit a claim is online at www.xxxxxxxxxx.com**, or you can complete and mail this Claim Form to the mailing address above.

**You may submit a claim for one or more of these benefits**:

**Documented Ordinary Out-of-Pocket Expenses:** If you submit a Valid Claim showing that you spent money or incurred losses, as a result of the Data Incident, you may be eligible for reimbursement up to $1,500.

**Reimbursement for Attested Lost Time:** Class Members are also eligible to receive reimbursement for up to three hours of lost time spent dealing with the Data Incident, calculated at the rate of $20 per hour.

**Documented Extraordinary Out-of-Pocket Expenses:** For certain documented monetary losses, you may be eligible for reimbursement up to $4,000. You must submit a Valid Claim to receive these benefits.

**Identity Theft Protection and Credit Monitoring.** Class Members may submit a Claim to accept two years of free 1-bureau credit monitoring and identity theft restoration services. Individuals who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident will be automatically provided one year of 1-bureau credit monitoring services without the need to make an affirmative claim.

**Claims must be submitted online or postmarked by Month 00, 202X. Use the address at the top of this form for mailing this Claim Form.**

*Please note: the Settlement Administrator may contact you to request additional documents to process your claim.*

For more information on the Settlement benefits, what documents you need to attach, how the Settlement Administrator will decide whether to approve your payments, and for complete instructions,
**visit www.xxxxxxx.com**.

**Settlement Benefits will be distributed only after the Settlement is approved by the Court.**

## Your Information

*We will use this information to contact you and process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing **info@xxxxxxxxxxxxx.com**.*

| | | | |
|---|---|---|---|
| **1. NAME:** | First | Middle Initial | Last |
| **2. MAILING ADDRESS:** | Street Address | | |
| | Apt. No. | | |
| | City | | |
| | State | | |
| | ZIP | | |
| **3. PHONE NUMBER:** | | | |
| **4. EMAIL ADDRESS:** | | | |
| **5. UNIQUE ID provided on mailed notice (if known):** | | | |

## Documented Ordinary Out-of-Pocket Expenses

To receive reimbursement for documented out-of-pocket expenses for up to $1,500, you must submit a Valid Claim, including documentation supporting your claim. You must sign the Signature and Attestation section at this end of this claim to receive these benefits.

Class Members who submit a Valid Claim are eligible for the following documented ordinary out-of-pocket expenses, not to exceed $1,500 per Class Member, that were incurred as a result of the Data Incident (next page):

*Documented Ordinary Out-of-Pocket Expenses, Continued.*

| Loss Type | Amount of Expense and Date |
|---|---|
| Unreimbursed bank fees | $<br><br><br>Date: |
| Long distance phone charges | $<br><br><br>Date: |
| Cell phone charges (only if charged by the minute) | $<br><br><br>Date: |
| Data charges (only if charged based on the amount of data used) | $<br><br><br>Date: |
| Postage | $<br><br><br>Date: |
| Gasoline for local travel | $<br><br><br>Date: |
| Unreimbursed losses due to fraud or identity theft | $<br><br><br>Date: |
| Any other charge or loss reasonably related to the Data Incident incurred by Class Members between March 20, 2023, and [the Claims Deadline]. | |

Questions? Go to **www.xxxxxxxxxx.com or call 1-xxx-xxx-xxxx.**                              Page **3** of 6

## Reimbursement for Attested Lost Time

Class Members are also eligible to receive reimbursement for up to three hours of lost time spent dealing with the Data Incident, calculated at the rate of $20 per hour (but only if at least one full hour was spent dealing with the Data Incident).

☐ 1 Hour    ☐ 2 Hours    ☐ 3 Hours

Check all activities, below, which apply.
- ☐ Time spent obtaining credit reports.
- ☐ Time spent dealing with a credit freeze.
- ☐ Time spent dealing with bank or credit card fee issues.
- ☐ Time spent monitoring accounts.
- ☐ Time spent updating automatic payment programs because your card number changed.
- ☐ Other (please describe)

_____

_____

_____

☐ I attest that any claimed lost time was spent responding to issues raised by the Data Incident.

Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses.

## Documented Extraordinary Out-of-Pocket Expenses

Class Members are eligible to receive reimbursement for documented extraordinary out-of-pocket losses, not to exceed $4,000 per Class Member for documented monetary loss that:

1)     is actual, documented, and unreimbursed;

2)     was more likely than not caused by the Data Incident;

3)     occurred between March 20, 2023, to [the Claims Deadline]; and

4)     is not already covered by one or more of the above-referenced reimbursed expenses.

Your Documented Extraordinary Out-of-Pocket Expense Claim must include documentation that you made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

| Loss Type | Amount of Expense and Date | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Incident) |
|---|---|---|

Questions? Go to **www.xxxxxxxxxx.com or call 1-xxx-xxx-xxxx.**

| | | |
|---|---|---|
| Documented extraordinary expenses directly associated with dealing with the Data Incident | $<br><br>Date: | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |

## Identity Theft Protection and Credit Monitoring

**To accept two years of free 1-bureau credit monitoring and identity theft restoration services, check the box below:**

☐ Yes, I would like to accept two years of free 1-bureau credit monitoring and identity theft restoration services.

**If you previously enrolled in credit monitoring services offered by Defendant following the Data Incident, you will be automatically provided one year of 1-bureau credit monitoring services, and you do not need to make a claim to receive that benefit.

## How You Would Like to Receive Your Settlement Benefit Payment

If you made a claim for a Settlement benefit payment on this Claim Form, you can elect to receive your payment either by check or by electronic payment. If you choose an electronic payment, instructions for receiving your payment will be sent to the email address you provided on this Claim Form. Checks must be cashed within 90 days of issuance.

Which do you prefer?

☐ Electronic payment
☐ Pre-paid credit card
☐ Check

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 60 of 85 PageID #: 311

Questions? Go to www.xxxxxxxxxx.com or call 1-xxx-xxx-xxxx.                              Page **5** of 6

## Signature and Attestation

I affirm under the laws of the United States that the information supplied in this Claim Form is true and correct to the best of my knowledge and that any documents that I have submitted in support of my claim are true and correct copies of original documentation.

I affirm under the laws of the United States that the losses or expenses claimed were incurred as a result of the Data Incident.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

| Signature: | Date: |
|---|---|
| | |

**Print Name:**

REMINDER: You can submit your claim online at **www.xxxxxxxxxx.com.** If you choose to submit your claim by mail, this form must be completed, signed, and sent to the Settlement Administrator, **postmarked** no later than **Month, 00**, **202X**, and addressed to: **TOC SETTLEMENT ADMINISTRATOR, PO Box XXXX, Portland, OR XXXXX.**

Case 3:23-cv-00598    Document 35-2    Filed 10/27/23    Page 61 of 85 PageID #: 312

Questions? Go to **www.xxxxxxxxxx.com or call 1-xxx-xxx-xxxx.**                    Page **6** of **6**

# EXHIBIT D

| | | |
|---|---|---|
| **JENNIFER BANDY, on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) ) | **Case No. 3:23-CV-00598** |
| **TOC ENTERPRISES, INC d/b/a Tennessee Orthopaedic Clinics, a division of TENNESSEE ORTHOPAEDIC ALLIANCE, P.A.,** | ) ) ) ) ) ) | **District Judge Aleta A. Trauger** |
| **Defendant.** | ) ) ) | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

**WHEREAS,** the above-captioned class action is pending in this Court (the "Action");

**WHEREAS**, Plaintiff Jennifer Bandy, individually and on behalf of all others similarly situated ("Plaintiff") and Defendant TOC Enterprises, Inc. d/b/a/ Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A., ("Defendant") have entered into a Settlement Agreement (the "Settlement Agreement") that settles the above-captioned litigation and provides for a complete dismissal with prejudice of the claims asserted against Defendant in the above-captioned action (the "Action") on the terms and conditions set forth in the Settlement Agreement, subject to the approval of the Court;

**WHEREAS**, Plaintiff has made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Settlement Agreement, certifying the Settlement Class for purposes of the Settlement only, appointing Plaintiff as Class Representative, appointing Class Counsel as counsel for the

Settlement Class, appointing Epiq Class Action & Claims Solutions, Inc. ('Epiq') as Settlement Administrator, and allowing notice to Settlement Class Members as more fully described herein;

**WHEREAS**, the Court has read and considered: (a) Plaintiff's motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Settlement Agreement and exhibits attached thereto; and

**WHEREAS**, unless otherwise defined herein, the capitalized terms herein shall have the same meaning as they have in the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.    **Jurisdiction:** The Court, pursuant to 28 U.S.C. § 1332, has jurisdiction over the Litigation, Plaintiff, Class Members, Defendant, and any party to any agreement that is part of or related to the Settlement Agreement.

2.    <u>**Class Certification for Settlement Purposes Only**</u>. For settlement purposes only and pursuant to Fed. R. Civ. P. 23(b)(3) and (e), the Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class in this matter defined as follows:

> all natural persons residing in the United States who were sent notice that their Private Information was potentially impacted in the Data Incident.

The Settlement Class includes approximately 46,679 people. The Settlement Class specifically excludes: (i) Defendant and its employees, officers, and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

3.    <u>**Class Findings**</u>:  The Court provisionally finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be

2

impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Class Representative is typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; (d) the Class Representative and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Class Representative has no interests antagonistic to or in conflict with the Settlement Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

4. **Class Representatives and Settlement Class Counsel**:   Plaintiff Jennifer Bandy is hereby provisionally designated and appointed as the Class Representative. The Court provisionally finds that the, for settlement purposes only, Class Representative is similarly situated to absent Settlement Class Members and therefore typical of the Settlement Class and that she will be an adequate Class Representative.  The Court further finds that Lisa White and Danielle Perry of Mason LLP are experienced and adequate counsel and are hereby provisionally designated as Settlement Class Counsel.

5. **Preliminary Settlement Approval**.  The Court hereby preliminarily approves the Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate to the Settlement Class, subject to further consideration at the Final Approval Hearing to be conducted as described below.  Pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, the Parties have shown that the Court will likely be able to approve the proposal under Rule 23(e)(2), which requires the Court to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(a) have the class representatives and class counsel adequately represented the class;

(b) was the proposal negotiated at arm's length;

(c) is the relief provided for the class adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(d) does the proposal treat class members equitably relative to each other.

Solely for the purposes of preliminary approval, the Court finds: (a) Plaintiff and Plaintiff's Counsel have adequately represented the Settlement Class; (b) the Settlement is the result of arm's length negotiations conducted between experienced counsel; (c) the relief provided is adequate when considering (i) the substantial costs, risks, and delay of continued litigation, (ii) the proposed method for processing Settlement Class Members' claims and distributing relief to eligible claimants is standard in data security class action settlements and has been found to be effective in these types of settlements, and (iii) the conditions under which the Parties may terminate the Settlement is standard and has no negative impact on the fairness of the Settlement; and (d) the Settlement treats Settlement Class Members equitably relative to one another.

6. **Final Approval Hearing**. A Final Approval Hearing shall be held at \_\_\_:\_\_.m. on \_\_\_\_\_, 2023, in the United States District Court for the Middle District of Tennessee, [at the Fred D. Thompson U.S. Courthouse and Federal Building, 719 Church Street, Suite 1300, Nashville, TN 37203] or via Zoom or by phone for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Settlement Agreement is fair, reasonable and adequate to the Settlement Class; (b) to determine whether a proposed Judgment substantially in the form annexed to the Settlement Agreement as Exhibit E should be entered dismissing the Action with prejudice against Defendant; (c) to determine whether Plaintiff's

4

motion for fees, costs and an incentive award should be approved; and (d) to consider any other matters that may be properly brought before the Court in connection with the Settlement. Notice of the Settlement and the Final Approval Hearing shall be given to the Settlement Class Members as set forth in Paragraph 7 of this Order.

7. The Court may adjourn the Final Approval Hearing without further notice to the Settlement Class Members, and may approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class Members.

8. **Retention of Settlement Administrator and Manner of Giving Notice**. The Parties are authorized to retain Epiq (the "Settlement Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as set for more fully below. Notice of the Settlement and the Final Approval Hearing shall be given as follows:

(a)     Within fourteen (14) days of this Order, Defendant shall provide the Settlement Class List to the Settlement Administrator;

(b)     Within sixty (60) days of this Order, the Settlement Administrator shall issue Notice to the Settlement Class Members in the manner set forth in the Settlement Agreement; and

(c)     Prior to the dissemination of the Notice, the Settlement Administrator shall establish the Settlement Website as set forth in the Settlement Agreement.

9. **Approval of Form and Content of Notice**. The Court (a) approves, as to form and content, the Claim Form, the Long Notice, and the Short Notice, attached to the Settlement Agreement as Exhibits A, B, and C, and (b) finds that the Notice provided to Settlement Class Members as set forth in the Settlement Agreement (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, of the effect of the proposed

Settlement (including the releases to be provided thereunder), of Class Counsel's request for Fee Award and Costs, of Class Representative's request for an Incentive Award Payment, of their right to object to the Settlement, Class Counsel's request for Fee Award and Costs, and/or Class Representative's request for an Incentive Award Payment, of their right to exclude themselves from the Settlement Class, and of their right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate and sufficient notice to all persons entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules. The date and time of the Final Fairness Hearing shall be included in the Notice before it is distributed.

10. **Participation in the Settlement**. Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Notice and the Claim Form, and must do so within ninety (90) days after the Notice Date. If a Final Approval Order and Judgment is entered, all Settlement Class Members who do not submit a claim in accordance with the requirements and procedures specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Settlement Agreement, the Release included in that Settlement Agreement, and the Final Approval Order and Judgment.

11. **Claims Process and Distribution and Allocation Plan**. The Parties have created a process for assessing and determining the validity and value of claims and a payment methodology to Settlement Class Members who submit a timely, valid Claim Form. The Court preliminarily approves the claims process described in the Settlement Agreement and directs that

6

the Settlement Administrator effectuate the distribution of Settlement consideration according to the terms of the Settlement Agreement, should the Settlement be finally approved.

12.    **Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written notification of the intent to exclude himself or herself from the Settlement Class to the Settlement Administrator at the address provided in the Notice, postmarked no later than **60 Days after the date Notice is mailed to the Settlement Class Members** (the "Opt-Out Deadline"). The written notification must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication.

Any Settlement Class Member who does not timely and validly exclude himself or herself from the Settlement shall be bound by the terms of the Settlement Agreement. If a Final Approval Order and Judgment is entered, any Settlement Class Member who has not submitted a timely, valid written notice of exclusion from the Settlement Class shall be bound by all proceedings, orders, and judgments in this matter, including but not limited to the Release set forth in the Final Approval Order and Judgment, including Settlement Class Members who have previously initiated or who subsequently initiate any litigation against any or all of the Released Parties relating to the Released Claims. All Settlement Class Members who submit valid and timely notices of exclusion from the Settlement Class shall not be entitled to receive any benefits of the Settlement.

13.    **Objections and Appearances**. No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless the objection is filed with the Clerk of Court and served concurrently on Class Counsel and counsel for Defendant no later than **60 Days after the**

**date Notice is mailed to the Settlement Class Members** (the "Objection Deadline") as specified in the Notice and Section 5 of the Settlement Agreement. For an objection to be considered by the Court, the objection must also include all of the information set forth in Paragraph 5.1 of the Settlement Agreement, which is as follows: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.

14. Any Settlement Class Member who fails to comply with the provisions in Section 5 may waive and forfeit any and all rights he or she may have to object, and shall be bound by all the terms of the Settlement Agreement, this Order, and by all proceedings, orders, and judgments in this matter, including, but not limited to, the release in the Settlement Agreement if a Final Approval Order and Judgment is entered. If a Final Approval Order and Judgment is entered, any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and shall be forever barred from making any such objections in this Action or in any other proceeding or from challenging or opposing, or seeking to reverse,

vacate, or modify any approval of the Settlement Agreement, the motion for an Incentive Award Payment, or the motion for Fee Award and Costs.

15. **Termination of Settlement**. This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing as of the date of the execution of the Settlement Agreement if the Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

16. **Use of Order**. This Order shall be of no force or effect if a Final Approval Order and Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, liability, or the certifiability of any class. Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Settlement Class Representative or any other Settlement Class Member that his or her claim lacks merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claim he, she, or it may have in this litigation or in any other lawsuit.

17. **Stay of Proceedings and Temporary Injunction**. Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement. Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Plaintiff, and all other members of the Settlement Class, from commencing or prosecuting any and all of the Released Claims against the Released Entities.

9

18.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

19.     **Summary of Deadlines**. The preliminarily approved Settlement shall be administered according to its terms pending the Final Fairness Hearing. Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

| From Order Granting Preliminary Approval | |
|---|---|
| Notice Date | 60 days after entry of preliminary approval order |
| Class Counsel's Motion for Attorneys' Fees, Costs, and Expenses, and Class Representative Incentive Award | 14 days before the Opt-Out and Objection Deadlines |
| Objection Deadline | 60 days after Notice Date |
| Opt-Out Deadline | 60 days after Notice Date |
| Opt-Out List to Class Counsel and Defendant's Counsel | 10 days after Opt-Out Deadline |
| Claims Deadline | 90 days after Notice Date |
| Final Approval Hearing | , 2023 |
| Motion for Final Approval | 14 days before the Final Fairness Hearing |
| | |
| Effective Date | 31 days after Order granting Final Approval, assuming no appeals have been filed. |
| Payment of Attorneys' Fees and Expenses Class Representative Incentive Award | 30 days after Effective Date |
| Payment of Claims Postmarked and Mailed to Class Members | 60 days after Effective Date |
| Settlement Website and IVR Line Deactivation | 180 days after Effective Date |
| | |

**IT IS SO ORDERED** this ____ day of _____, 202___.

_____
Hon. Aleta A. Trauger

EXHIBIT 2



Mason LLP is dedicated to representing plaintiffs in class actions, mass torts and individual cases in courts throughout the United States

Our attorneys have a long history of obtaining major verdicts and settlements. We frequently lead, co-lead, or perform other leadership roles in class actions of national significance. Examples include the Office of Personal Management (OPM) data breach litigation (in which one of our attorneys is appointed Liaison Counsel) and the Entran II product liability litigation (in which one of our attorneys served as Co-Lead Counsel and successfully resolved the case for $330 million).

## THE FIRM'S PRINCIPAL LAWYERS

**Gary E. Mason**
*Founding Partner*



Gary graduated magna cum laude, Phi Beta Kappa, from Brown University and Duke University Law School, where he was an editor of *Law and Contemporary Problems*. He then served as a law clerk for the Honorable Andrew J. Kleinfeld of the U.S. District Court for the District of Alaska. *Gary was previously an Associate at Skadden Arps and a Partner at Cohen Milstein where he was the first Co-Chair of its Consumer Protection Practice Group.*

Gary is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Gary has recovered more than $1.5 billion in the 29 years he has represented plaintiffs. With his broad experience, Gary is nationally known for representing consumers in class actions involving a wide range of defective products, including Chinese drywall, fire retardant plywood, polybutylene pipe, high-temperature plastic venting, hardboard siding, pharmaceutical products, consumer electronics and automobiles. He also is recognized for his successful representation of persons injured by negligently discharged pollutants (e.g., *In re the Exxon Valdez*) and victims of wage theft. He currently represents more than 2,000 Customs and Border Patrol Agents in FLSA litigation against the federal government, more than 1,500 women injured by use of a defective tampon product, thousands of owners of animals injured by contaminated dog food, and over 23 million individuals whose personal data was compromised by the U.S. Office of Personal Management data breach.

Gary was an early advocate for victims of security breaches and privacy violations, starting with the first settlement arising from a Google data breach (*In re Google Buzz*), the Department of Veterans

Affairs stolen laptop case, and continuing in data breach cases to-date. Mr. Mason recently served as liaison counsel in a data breach case filed against the Office of Personnel Management. *In re U.S. Off. Of Pers. Mgmt. Data Security Breach Litig.,* 266 F. Supp. 3d 1 (D.D.C. 2017) (final approval of a $63 million settlement fund granted in October 2022). He currently serves as one of the co-lead counsel for the *Farley, et al. v. Eye Care Leaders* data breach matter related to the breach of over three million individuals' data, which is pending in the Middle District of North Carolina, Case No. 1:22-cv-468. He also serves as co-lead counsel for the following pending cases: *Guy, et al. v. Convergent Outsourcing, Inc.,* Case 2:22-cv-01558 (WD Wash.); *Alvarado, et al. v. JDC Healthcare Management, LLC,* Case No. DC-22-03137 (District Court of Dallas County, Texas); *Tucker, et al. v. Marietta Area Health Care,* Case No. 2:22-cv-00184 (SD Ohio) (preliminary approval granted June 2023); and *Darrin v. Huntington Ingalls Industries*, Case No. 4:2023-cv-00053 (ED Virginia).

Gary has served in leadership positions in many consumer class actions in State and Federal courts nationwide as well as in MDLs. Gary writes and speaks frequently on topics related to class action litigation. He was the 2012–2013 Co-Chair of the Class Action Litigation group for the American Association for Justice and presently serves as the Chairman of its Rule 23 Task Group. He has repeatedly been named a Washington, DC Super Lawyer for Class Actions.

Gary lives in Bethesda, Maryland.

**Danielle L. Perry**
***Partner***



Danielle L. Perry is a partner at Mason LLP, and offers nearly a decade of class action litigation experience to the benefit of her clients. Graduating from the University of California, Berkeley in 2010 and from Loyola Law School, Los Angeles in 2013, Ms. Perry is licensed to practice in the State of California, District of Columbia, and in numerous federal district courts across the country as well as the U.S. Court of Federal Claims, and the Fifth, Seventh, and Federal Circuit Courts of Appeals. While Ms. Perry originally focused her career on employment law class actions, after her first few years of practice she expanded her experience and resume to cover numerous data breach and consumer class actions as well. Ms. Perry, either as an individual or as a member of her firm, has been named class counsel or appointed to leadership positions in numerous data breach class actions including: *Woods v. Albany ENT & Allergy Services, P.C.*, Index No. 904730-23 (N.Y. Sup. Ct. Albany Cnty.) (appointed Interim Co-Lead Counsel July 2023); *Rasmussen et al. v. Uintah Basin Healthcare*, Case No. 2:23-cv-00322 (D. Utah) (appointed Interim Co-Lead Counsel June 2023); *In re NCB Management Services, Inc. Data Breach Litigation*, Case No. 23-1236 (E.D. Pa.) (appointed to the Plaintiffs' Steering Committee, June 2023); *In re Flagstar December 2021 Data Security Incident Litigation,* Case No. 22-cv-11385 (E.D. Mich.) (appointed to the Plaintiffs' Executive Committee, May 2023); *Rodriguez v. Mena Regional Health System,* Case No. 2:23-cv-02002 (W.D. Ark.) (appointed Co-Lead Counsel, Apr. 2023); *Anderson v. Fortra, LLC,* Case No. 23-cv-533 (Dist. Minn.) (appointed to the Executive Committee, Apr. 2023); *Nelson et al. v. Connexin Software Inc., d/b/a Office Practicum*, Case No. 2:22-cv-04676 (E.D. Penn.) (appointed

to the Plaintiffs' Steering Committee, Apr. 2023); *Colston et al. v. Envision Credit Union,* Case No. 2022CA1476 (2d. Jud. Cir. For Leon County, Fl.) (appointed class counsel, final approval granted Apr. 2023); *Dekenipp v. Gastroenterology Consultants, P.A.*, Case No. 202161470 (295th District Court for Harris County, Texas) (appointed class counsel, final approval granted Nov. 2022); *Richardson v. Overlake Hosp. Med. Ctr., et al*., No. 20-2-07460-8 SEA (Wash. Super. Ct. King Cnty.) (appointed class counsel, final approval granted Sept. 2021); *Cece, et al. v. St. Mary's Health Care Sys., Inc., et al*., No. SU20CV0500 (Ga. Super. Ct. Athens-Clarke Cnty.) (appointed class counsel, final approval granted Apr. 2022).

Ms. Perry also has extensive experience providing support to appointed committees in MDL cases across the country. *See, e.g.*, *In re Deva Concepts Prods. Liab. Litig.*, No. 1:20-cv-01234-GHW (S.D.N.Y.) (final approval granted Jan. 3, 2022) (Mason LLP served as court-appointed Co-Lead Counsel and Ms. Perry undertook significant work for clients and class members with extensive hair loss, leading client interviews, drafting pleadings, and preparing settlement and settlement approval papers); *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, No. 2:19-md-02887, MDL No. 2887 (D. Kan.) (final approval granted Oct. 2021) (Mason LLP served as court-appointed Co-Lead Counsel and Ms. Perry played a significant role for clients and class members who purchased dog food with sometimes lethal amounts of vitamin D, participating in client intake, discovery, and preparing settlement and settlement approval papers); *In re Marriott Int'l Inc., Customer Data Sec. Breach Litig.*, No. 8:19-md-02879 (D. Md.) (Ms. Perry contributed to the plaintiff interview process and drafting of the consolidated amended complaint in data breach case); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig*., 266 F. Supp. 3d 1 (D.D.C. 2017) (Mason LLP served as Liaison Counsel, and Ms. Perry has completed research assignments in support of and at the request of Lead Counsel in data breach case). Additionally, Ms. Perry has also been appointed to the Leadership Development Committee in *In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:22-mc-00152, MDL No. 3021 (W.D. Pa. Apr. 27, 2022), where she works closely with Lead Counsel in all areas of litigation and fights for consumers' rights pertaining to the purchase of defective and/or unsafe products.

Outside of work, Ms. Perry enjoys being in the sun and on the water, is trying not to kill her garden, and is constantly planning future home renovations. Ms. Perry lives outside of Annapolis, Maryland.

**Lisa White**
*Senior Attorney*



Lisa A. White is a writer and researcher at heart, known for her attention to detail, optimism, and creative approach to legal problem-solving. Most of Lisa's work is in the federal court system, both in the District Courts and Circuit Courts of Appeals. She is licensed to practice in the State of Tennessee, and in numerous federal district courts across the country as well as the Seventh and Ninth Circuit Courts of Appeals.

Lisa's primary areas of practice are data breach litigation, product defect, product misrepresentation, and wage and hour class actions. Her role at Mason LLP frequently involves investigating and researching potential

cases and claims prior to a complaint being filed, as well as drafting pleadings and detailed research required for and during litigation.

Prior to joining Mason LLP, Lisa practiced at another plaintiffs' class action firm, where she advocated for employees who were improperly paid, especially in the airline industry. She also worked on lawsuits related to defective products and deceptive advertising. She was frequently called on to research and draft appellate briefs.

Lisa returned to law school after completing her Bachelor's and Master's in Sociology from The University of Tennessee, then teaching for a number of years at universities. She completed the coursework for her Ph.D. in American Studies at The College of William and Mary, then opted to go to law school—a childhood goal. Lisa is a graduate of The University of Tennessee College of Law. While at The University of Tennessee College of Law, Lisa was a Co-Coordinator of the Tennessee Innocence Project, the Research Editor for Tennessee Journal of Law and Policy. While a law student, she practiced in both the Domestic Violence Clinic and the Advocacy Clinic. Lisa has published peer-reviewed papers in three academic fields: law, sociology, and history.

Lisa and her family are avid travelers, and she has visited all seven continents. In addition, for three years, she worked remotely practicing class action law while living in Greymouth, New Zealand.

**Theo Bell**
*Attorney*



Theodore B. Bell ("Theo") is Of Counsel at Mason LLP. Theo is an experienced attorney with over 25 years of litigation experience. Theo is admitted to practice law in both Illinois and Michigan and various federal courts around the country. Before recently joining Mason LLP, Mr. Bell's prior work experience included over 12 years at a mid-sized nationwide class action firm where Mr. Bell focused his practice mainly on antitrust, as well as consumer and securities class actions. Theo's previous work experience also includes working at a firm that focused on representing class action opt-outs in antitrust cases, another firm that represented workers' compensation insurance carriers where he focused his practice on litigating premium fraud cases in federal court, as well as a general practice firm where Theo gained extensive experience litigating state court cases in a wide array of civil practice areas.

Notable cases that Mr. Bell has worked on include:
- *Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*, Case No. 10-cv-14360 (E.D. Mich.) (antitrust price-fixing case involving most-favored-nation agreements – $29.9 million class settlement);
- *In re Dairy Farmers of America Cheese Antitrust Litigation*, Case No. 09-cv-3960, (N.D. Ill.) (antitrust price-fixing case involving manipulation of cheese and milk futures to raise prices of dairy products – $46 million class settlement);
- *McDonough, et al. v. Toys "R" Us,* Case No. 06-cv-242 (E.D. Pa.) (antitrust case involving

retail price maintenance – $35.5 million class settlement);

- *In re Sulfuric Acid*, Case No. 03-4576, (N.D. Ill.) (antitrust price-fixing case involving output restrictions – class settlements totaling over $6 million);
- *In Re: Groupon Derivative Litigation*, Case No. 12-cv-5300 (N.D. Ill.) (shareholder derivative suit involving materially false and misleading statements concerning Groupon's business operations and financial condition prior to Groupon's IPO – settlement obtained substantial beneficial corporate-governance reforms); and
- *Messner v. Northshore University Health System*, 669 F.3d 802 (7th Cir. 2012) (illegal monopolization and attempted monopolization through hospital mergers – Theo was part of the appellate team that successfully obtained reversal of the U.S. District Court's denial of class certification).

Theo is a graduate of The University of Michigan, where he earned his Bachelor's degree in Sociology, and the University Of Detroit Mercy School Of Law where Mr. Bell earned his law degree.

**Salena Chowdhury**
*Associate Attorney*



Salena Chowdhury is an associate attorney at Mason LLP. She is a graduate of the University of Tennessee College of Law. She also attended the University of Tennessee at Knoxville for her bachelor's where she majored in political science with a concentration in public administration and a minor in psychology. Salena has been admitted to the Illinois bar and to the District of Columbia bar.

Salena has had a passion for law since she was a kid. While Salena was still in high school, she began working at her first law firm. She continued to work at various law firms gaining a diverse area of legal experience throughout her undergraduate studies and law school.

Since joining Mason LLP Salena has gained experience in mediations, data breach, product defect, product misrepresentation, and wage & hour class actions. She is known for her quick learning curve and adaptability to challenges. Her role at Mason LLP is expanding as she takes on new responsibilities in major cases.

Salena comes from a large diverse family background. She values the time spent with her family. She enjoys outdoor activities like 4-wheeling, soccer, and playing with her dogs. Additionally, she loves to travel and to learn about other cultures.

5

# NOTABLE CLASS ACTION CASES

## Antitrust

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

## Products

*In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:22-mc-00152, MDL No. 3021 (W.D. Pa) (court-appointed Co-Lead Counsel).

*In re Deva Concepts Prods. Liab. Litig.*, No. 1:20-cv-01234 (S.D.N.Y.) (court appointed Co-Lead Counsel; $5.2 million settlement).

*In re Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig.*, No. 19-md-2887-JAR-TJJ, MDL No. 2887 (D. Kan.) (court-appointed Co-Lead Counsel; $12.5 million settlement).

*Smid et al. v. Nutranext, LLC*, No. 20L0190 (Ill. Cir. Cit. St. Clair Cnty. 2020) ($6.7 million settlement).

*Ersler, et. al v. Toshiba Am., et. al*, No. 1:07-cv-02304 (E.D.N.Y. 2009) (settlement of claims arising from allegedly defective television lamps).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct. 2004) ($100 million class settlement of claims that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified).

*Hurkes Harris Design Assocs., Inc., et al. v. Fujitsu Comput. Prods. of Am., Inc.* (2003) (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives).

*Turner v. Gen. Elec. Co.*, No. 2:05-cv-00186 (M.D. Fla. 2006) (national settlement of claims arising from allegedly defective refrigerators).

## Automobiles

*Falk v. Nissan N. Am., Inc.*, No. 4:17-cv-04871 (N.D. Cal. 2020) (Co-Lead Counsel in litigation alleging damages from defective transmissions; national settlement extending warranty for 1.5 million vehicles).

*In re Gen. Motors Corp. Speedometer Prods. Liab. Litig.*, MDL No. 1896 (W.D. Wash. 2007) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers).

*Baugh v. The Goodyear Tire & Rubber Co.* (2002) (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program).

*Lubitz v. Daimler Chrysler Corp.*, No. L-4883-04 (N.J. Super. Ct. Bergen Cnty. 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey).

*Berman et al. v. Gen. Motors LLC*, No. 2:18-cv-14371 (S.D. Fla. 2019) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litig.*, No. 1:08-mc-00511 (D.D.C. 2013) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans).

*Bruce, et. al. v. County of Rensselaer et. al.,* No. 02-cv-0847 (N.D.N.Y. 2004) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses).

## Commercial

*In re Outer Banks Power Outage Litig.*, No. 4:17-cv-141 (E.D.N.C. 2018) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage).

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo. 2011) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee).

*Elliott et al v. KB Home North Carolina Inc. et al*, No. 08-cv-21190 (N.C. Super. Ct. Wake Cnty. 2017) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier).

*In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.,* MDL No. 2514 (D.S.C.) (class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co*., No. 12-cv-00685-RBJ, 2014 WL 3353264 (D. Colo. July 9, 2014) (class action arising from allegedly defective radiant heating systems; Colorado class certified).

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. o:08-md-01958, MDL No. 1958 (D. Minn. 2012) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement).

*Hobbie et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113, MDL No. 2047 (E.D. La. 2012) ($30 million settlement for remediation of 364-unit residential high-rise constructed with Chinese drywall).

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. 2:09-md-02047, MDL No. 2047 (E.D. La. 2012) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee).

*Galanti v. Goodyear Tire & Rubber Co*., No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems).

*In re Synthetic Stucco Litig.*, No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liab. Litig.*, MDL No. 1132 (E.D.N.C.) (represented over 100 individual homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey et al. v. Dryvit Sys., Inc.*, No. 17,715-IV (Tenn. Cir. Ct. 2002) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants).

*Sutton, et al. v. The Fed. Materials Co., et al*, No. 07-CI-00007 (Ky. Cir. Ct.) (Co- Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) (Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*In re Elk Cross Timbers Decking Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 15-cv-0018, MDL No. 2577 (D.N.J. 2017) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings).

*Bridget Smith v. Floor & Decor Outlets of America, Inc*., No. 1:15-cv-4316 (N.D. Ga.) (Co- Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Mktg., Sales Pracs. Litig.*, No. 1:16-md-2743 (E.D. Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Prods. Liab. Litig.*, No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Prods. Liab. Litig.*, No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

**Environmental**

*Bell v. WestRock, CP, LLC*, No. 3:17-cv-829-JAG (E.D. Va. 2020) (Co-Lead Counsel in litigation alleging nuisance from wood dust from paper mill; class certification motion pending; class certified; $700,000 settlement).

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C. 2008) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station).

*In re Swanson Creek Oil Spill Litig.*, No. 8:00-cv-01429-PJM (D. Md. 2002) (Lead Counsel; $2.25 million settlement of litigation arising from largest oil spill in history of State of Maryland).

**Fair Labor Standards Act (FLSA) / Wage and Hour**

*Craig v. Rite Aid Corp.*, No. 08-2317 (M.D. Pa. 2013) (FLSA collective action and class action settled for $20.9 million).

*Stillman v. Staples, Inc.*, No. 2:07-cv-00849-PS (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million).

*Lew v. Pizza Hut of Maryland, Inc.*, No. CBB-09-CV-3162 (D. Md. 2011) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing

9

recompense of 100% of lost wages).

**Financial**

*Roberts v. Fleet Bank (R.I.), N.A.*, No. 00-6142 (E. D. Pa. 2003) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.").

*Penobscot Indian Nation v U.S. Dep't of Housing & Urban Dev.*, No. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act).

**Insurance**

*Young, et al. v. Nationwide Mut. Ins. Co., et al.*, No. 11-5015 (E.D. Ky. 2014) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir. 2012); settlements with all defendants for 100% refund of taxes collected).

*Nichols v. Progressive Direct Ins. Co., et al.*, No. 2:06-cv-146 (E.D. Ky. 2012) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million).

**Privacy / Data Breach**

*Woods v. Albany ENT & Allergy Services, P.C.*, Index No. 904730-23 (N.Y. Sup. Ct. Albany Cnty.) (Court-appointed Co-Lead Counsel).

*Darrin v. Huntington Ingalls Industries*, No. 4:2023-cv-00053 (ED Vir.) (Court-appointed Co-Lead Counsel).

*Farley v. Eye Care Leaders*, No. 22-cv-468 (M.D.N.C.) (Court-appointed Co-Lead Counsel).

*Nierman v. Schneck Med. Ctr.*, No. 36D01-2206-CT-000013 (Ind. Super. Ct. Jackson Cnty.) (Court-appointed Co-Lead Counsel).

*Dekenipp v. Gastroenterology Consultants, P.A.*, No. 202161470 (Tex. 295th Jud. Dist. Ct. Harris Cnty.) (Lead Counsel; claims made settlement and 18 months credit monitoring for class of 162,000 patients).

*Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*, No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty.) (Mr. Mason appointed Class Counsel in hospital data breach class action; final approval granted Sept. 2020).

*Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo.) (Mr. Mason appointed Class Counsel; final approval granted Dec. 2020).

*Chatelain v. C, L & W PLLC d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (Tex. 42d Jud. Dist. Ct. Taylor Cnty.) (data breach class action settlement valued at over $7 million; final approval granted Feb. 2021).

*Jackson-Battle v. Navicent Health, Inc.*, No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty.) (data breach case involving 360,000 patients; final approval granted Aug. 2021).

*Chacon v. Nebraska Med.*, No. 8:21-cv-00070-RFR-CRZ (D. Neb) (data breach settlement, final approval granted Sept. 2021).

*Richardson v. Overlake Hosp. Med. Ctr.*, No. 20-2-07460-8 SEA (Wash. Super. Ct. King Cnty.) (data breach class action involving approximately 109,000 individuals, final approval granted Sept. 2021).

*Martinez v. NCH Healthcare Sys., Inc.*, No. 2020-CA-000996 (Fla. 20th Jud. Cir. Ct. Collier Cnty.) (data breach class action settlement, final approval granted Oct. 2021).

*Carr v. Beaumont Health et al.*, No. 2020-181002-NZ (Mich. Cir. Ct. Oakland Cnty.) (data breach class action involving 112,000 people; final approval granted Oct. 2021).

*Klemm v. Maryland Health Enters. Inc.*, No. C-03-CV-20-022899 (Md. Cir. Ct. Balto. Cnty.) (appointed Class Counsel, final approval granted Nov. 2021).

*In re Ambry Genetics Data Breach Litig.*, No. 8:20-cv-00791 (C.D. Cal.) (court-appointed member Executive Committee; $12 million settlement).

*Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y.) (Court-appointed Class Counsel; final approval granted Feb. 2021*)*.

*Kenney v. Centerstone of America, Inc.*, No. 3:20-cv-01007 (M.D. Tenn.) (settlement involving over 63,000 class members; final approval granted August 2021);

*North v. Hunt Mem'l Hosp. Dist.*, No. 89642 (Tex. 196th Jud. Dist. Ct. Hunt Cnty) (settlement; final approval granted Dec. 2021).

*Cece v. St. Mary's Health Care Sys., Inc.*, No. SU20CV0500 (Ga. Super. Ct. Athens-Clarke Cnty.) (data breach case involving 55,652 people; final approval granted Apr. 2022).

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, No. 15-1393 (ABJ), MDL No. 2664 (D.D.C.) (court appointed interim Liaison Counsel; $60 million settlement).

*In re Google Buzz Priv. Litig.*, No. 5:10-cv-00672 (N.D. Cal. 2010) (court-appointed Lead Class Counsel; $8.5 million cy pres settlement).

*In re Dept. of Veterans Affs. (VA) Data Theft Litig.*, No. 1:2006-cv-00506, MDL 1796 (D.D.C. 2009) (Co-Lead Counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations).

*In re Adobe Sys. Inc. Priv. Litig.*, No. 5:13-cv-05226 (N.D. Cal. 2015) (settlement requiring enhanced cyber security measures and audits).