**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JENNIFER BANDY, on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 3:23-CV-00598** |
| **TOC ENTERPRISES, INC d/b/a Tennessee Orthopaedic Clinics, a division of TENNESSEE ORTHOPAEDIC ALLIANCE, P.A.,** | ) ) ) ) ) | **District Judge Aleta A. Trauger** |
| **Defendant.** | ) ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................ 1

II.   CASE SUMMARY ............................................................................................. 2

      A.   Initial Investigation and Communications ................................................. 2

      B.   Procedural Posture and History of Negotiations ....................................... 3

III.  SUMMARY OF SETTLEMENT ...................................................................... 5

      A.   Settlement Class ........................................................................................ 5

      B.   Settlement Benefits ................................................................................... 5

           1.   Monetary Relief ................................................................................. 5

           2.   Credit Monitoring and Identity Theft Restoration Services ............... 6

      C.   Attorneys' Fees, Costs, and Plaintiff's Service Award ............................. 7

      D.   The Notice and Claims Process ................................................................ 7

           1.   CAFA Notice ..................................................................................... 7

           2.   Class Notice ....................................................................................... 8

           3.   Notice Results .................................................................................... 9

           4.   Claims, Exclusion, Objections .......................................................... 10

      E.   Claims Processing and Payment ............................................................... 10

IV.   LEGAL AUTHORITY ...................................................................................... 10

V.    ARGUMENT ..................................................................................................... 11

      A.   The Settlement Administrator Provided Notice Pursuant to this Court's
           Preliminary Approval Order and Satisfied Due Process as Well as Rule 23 .............. 11

      B.   The Settlement Terms Are Fair, Adequate, and Reasonable. ...................... 13

           1.   The Settlement Agreement Meets the Requirements of Rule 23 and
                Should Be Approved. ........................................................................ 15

     a.   Class Representatives and Class Counsel have adequately represented the Class. ................................................................. 15

     b.   The settlement was the result of informed, non-collusive, arm's-length negotiations by experienced counsel. ...................................... 17

     c.   The relief provided for the Class is adequate. ................................. 17

        i.   The costs, risks, and delay of trial and appeal weigh in favor of approval. .................................................................. 19

        ii.   The method of processing claims and distributing relief is clear and efficient. .............................................................. 19

        iii.   The terms of proposed attorneys' fees and Service Award are reasonable. ................................................................. 20

            a.   The Class Representative's requested Service Award is reasonable and does not constitute improper preferential treatment. ........................................................ 20

            b.   Attorneys' fees requested are within the range of those regularly accepted by Sixth Circuit Courts. .................................... 21

            c.   No agreements exist that require disclosure under Rule 23(e)(3). .......................................................... 22

     d.   The Settlement Agreement treats proposed Class Members equitably. ........ 22

  2.   The Settlement Also Warrants Approval in Light of the Factors Traditionally Considered by Sixth Circuit Courts. ................................................. 23

VI.  CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980). ................................................................... 16

*Bowman v. Art Van Furniture, Inc.*,
   No. 17-11630, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018).......................... 11, 13

*Bronson v. Bd. of Educ. of Cincinnati*,
   604 F. Supp. 68 (S.D. Ohio June 22, 1984)................................................... 17

*Chacon v. Nebraska Medicine*,
   No. 8:21-cv-00070 (Dist. Neb. Sept. 15, 2021). ........................................... 18

*Franks v. Froger Co.*,
   649 F. 2d 1216, 1224 (6th Cir. 1981) ......................................................... 10

*Fulton-Green. v. Accolade, Inc.*,
   No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019)............................................... 18

*Garner Props. & Mgmt., LLC v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. Jan. 17, 2020).................................................. 20

*Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*,
   724 F.3d 713 (6th Cir. 2013) .................................................................... 22

*Grenada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ................................................................... 14

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) .................................................................... 22

*Hammond v. Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010).................. 19, 24

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty. v. Momenta Pharms., Inc.*,
   No. 3:15- cv-01100, 2020 WL 3053467 (M.D. Tenn. May 20, 2020) ............................. 14, 25

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-02311, 2018 WL 7108016 (E.D. Mich. Nov. 6, 2018) ........................... 14

*In re Cap. One TCPA Litig.*,
   80 F. Supp. 3d 781, 792 (N.D. Ill. Feb. 12, 2015).......................................... 16

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D.Mich.2003) ........................................................... 21

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013) ......................................................... 20, 21

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ........................................................ 19, 24

*In re Packaged Ice Antitrust Litig.*,
322 F.R.D. 276 (E.D. Mich. 2017) ........................................................ 11

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................... 23

*In re Regions Morgan Keegan Secs., Derivative & ERISA Litig.*,
No. 2:09-md-2009-SMH, 2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014) .......................... 25

*In re Se. Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ................................. 23, 25

*In re Serzone Prods. Liab. Litig.*,
231 F.R.D. 221 (S.D.W. Va. 2005) ........................................................ 11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) .............................. 19

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................. 15, 23

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615, 631 (6th Cir. 2007) .................................................... 11, 14

*Johnson v. W2007 Grace Acquisition I, Inc.*,
No. 13-2777, 2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015) .................................. 25

*Kenney v. Centerstone of America, Inc.*,
No. 3:20-cv-01007 (M.D. Tenn. Aug., 9, 2021) ........................................... 18

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp 2d 766 (S.D. Ohio Mar. 31, 2010) ............................................. 21

*Macy v. GC Servs. Ltd. P'ship*,
No. 3:15-cv-819, 2019 WL 6684522 (W.D. Ky. Dec. 6, 2019) .............................. 15, 24

*Mowery v. Saint Francis Healthcare Sys.*,
No. 1:20-cv-00013 (E.D. Mo. Dec. 22, 2020) ............................................. 18

v

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................... 11

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) ...................................................................... 15

*N.Y. State Tchrs.' Ret. Sys.*,
  315 F.R.D. (E.D. Mich. 2016) .............................................................................. 23

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) ......................................................................... 15, 24

*Ohio Pub. Int. Campaign v. Fisher Foods, Inc.*,
  546 F. Supp. 1 (N.D. Ohio Apr. 27, 1982) ......................................................... 10

*People First of Tenn. v. Clover Bottom Dev. Ctr.*,
  No. 3:95- cv-1227, 2015 WL 404077 (M.D. Tenn. Jan. 29, 2015) ................... 23, 25

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985). ........................................................................................... 11

*Radcliffe v. Experian Info. Sols.*,
  715 F.3d 1157 (9th Cir. 2013). ........................................................................... 22

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
  No. 4:16-cv-12808, 2019 WL 3530822 (E.D. Mich. Aug. 2, 2019). .................. 11

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ........................................................................ 15, 16

*Sheick v. Auto. Component Carrier LLC*,
  No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ............... 15, 24

*Todd v. Retail Concepts, Inc.*,
  No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ......................... 25

*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .............................................................................. 14

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) .............................................................................. 11

**STATUTES**

Tennessee Consumer Protection Act,
    Tenn. Code Ann. §§ 47-18-101, *et seq.* ................................................................... 3

Tennessee Identity Theft Deterrence Act (ITDA),
    Tenn. Code Ann. § 47-18-2104 . ............................................................................... 3

**RULES**

Fed. R. Civ. P. 12(b) ...................................................................................... 19, 24

Fed. R. Civ. P. 23 ................................................................................. 11, 13, 14, 15

Fed. R. Civ. P. 23(a) ............................................................................................. 16

Fed. R. Civ. P. 23(c) ............................................................................................. 11

Fed. R. Civ. P. 23(e). ............................................................. 1, 11, 13, 14, 15, 22

Fed. R. Civ. P. 56 ........................................................................................... 19, 24

Pursuant to Rule 23(e), Plaintiff Jennifer Bandy ("Plaintiff") submits this Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

On November 7, 2023, this Court preliminarily approved a proposed Class Action Settlement between Plaintiff Jennifer Bandy ("Plaintiff") and Defendant TOC Enterprises, Inc. d/b/a Tennessee Orthopaedic Clinics, a division of Tennessee Orthopaedic Alliance, P.A.'s ("Defendant" or "TOC") for all claims arising out of a March 2023 data security incident experienced by Defendant. Plaintiff alleges that her and Class Members' personal identifying information ("PII") and personal health information ("PHI") (collectively, the "Private Information") was compromised as a result of the Data Incident[1]. *See* Prelim. Approval Order, ECF No. 38. The settlement negotiated on behalf of the Class (the "Settlement Agreement," "Settlement," or "Agr.") provides for two separate forms of relief. First, TOC will provide for (a) reimbursement for documented out-of-pocket expenses up to $1,500 per Class Member who submits a Valid Claim (included within this first category, Class Members can collect payment for up to three hours of lost time, compensable at a rate of $20 per hour with no need to submit documentation); and (b) compensation for up to $4,000 per Class Member who submits a Valid Claim for documented extraordinary out-of-pocket losses. Second, TOC will provide two years of one-bureau identity theft protection and credit monitoring services for Class Members who submit a Valid Claim for Identity Theft Protection and Credit Monitoring services.[2] The Settlement

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

[2] Class Members who previously enrolled in the monitoring services offered by Defendant will *automatically* be provided and additional year of one-bureau credit monitoring services without the need to make any affirmative claim.

benefits are not subject to any aggregate cap, meaning every Class Member that submits a valid claim will receive relief as set forth in the Settlement Agreement.

Class Counsel have zealously prosecuted Plaintiff's claims, achieving this Settlement Agreement only after extensive investigation and multiple rounds of non-collusive, arm's-length negotiations. Even after agreeing to central terms of a settlement, Class Counsel worked for weeks to finalize the Settlement Agreement and associated exhibits pertaining to Notice, Preliminary Approval, and Final Approval.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. The Notice achieved a reach of approximately 96.2% and provided Settlement Class Members with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. As of date, out of approximately 46,679 Settlement Class Members, only three have sought to exclude themselves from the Settlement, and zero have objected.[3] The Claims Period is still open and will run through April 8, 2024.

## II.   CASE SUMMARY[4]

### A.   Initial Investigation and Communications

Plaintiff alleges that TOC is a comprehensive medical and surgical treatment center of bone, joint and soft tissue disorders, with locations across Tennessee including in Knoxville, Louisville, Sevierville, Lenoir City, and Oak Ridge. *See* Decl. of Danielle L. Perry in Supp. of

---

[3] The deadline to request exclusion (opt-out) from the Settlement or to object to the Settlement is March 8, 2024.

[4] Sections II and III have been largely adopted from the Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, filed October 27, 2023, at ECF No. 35-1.

Pl.'s Unopposed Mot. for Preliminary Approval of Class Action Settlement ¶ 11, ECF No. 35-2 ("Perry MPA Decl."). Plaintiff alleges that in the ordinary course of receiving treatment and health care services from TOC, patients are required to provide certain sensitive personal and private information to TOC. *Id.*

Plaintiff alleges the Data Incident, which occurred between March 20 and March 24, 2023, occurred when unauthorized person(s) accessed TOC computer systems that may have contained Private Information of class members. *Id.* ¶ 10. Such Private Information may have included at least, names, contact information, dates of birth, diagnosis and treatment information, provider names, dates of service, cost of services, prescription information, and/or health insurance information. *Id.* ¶ 11. Approximately 46,679 individuals may have been impacted in the Data Incident. *Id.* ¶ 12.

### B. Procedural Posture and History of Negotiations

Plaintiff Lynn Cadenas filed her original complaint, as next of friend and on behalf of M.C., a minor, and on behalf of all similarly situated individuals, in the United States District Court for the Middle District of Tennessee on June 12, 2021, bringing causes of action for: (1) Negligence; (2) Negligence *Per Se*; (3) Breach of Implied Contract; (4) Violations of the Tennessee Consumer Protection Act; (5) Unjust Enrichment; and (6) Violation of the ITDA. *Id.* ¶ 13. On July 24, 2024, Plaintiff Cadenas filed her Amended Class Action Complaint, adding Jennifer Bandy as a second named plaintiff. *Id.* ¶ 14.

Soon after, the Parties began discussing the potential for early Settlement after an exchange of information necessary to evaluate the strengths and weaknesses of Plaintiff's claims and TOC's defenses. *Id.* ¶ 15. During those discussions, it was discovered that neither Plaintiff Lynn Cadenas's nor M.C.'s Personal Information had been impacted by the Data Incident. As such, it

3

was discovered that neither is part of the class they seek to represent. *Id.* ¶ 16. Accordingly, Plaintiff Lynn Cadenas sought and obtained dismissal of their individual claims from the suit, and a second amended complaint was filed leaving Plaintiff Bandy as the sole, named plaintiff. *Id.* ¶ 17. After multiple rounds of non-collusive, arm's-length negotiations, conducted between opposing counsel by both email and over the telephone, the Parties eventually agreed to central terms of a settlement. *Id.* ¶ 18. On August 16, 2023, the Parties filed a Joint Notice of Settlement and Request to Set Briefing Schedule, informing the Court that a Settlement had been reached and that the Parties intended to file the final agreement and motion for preliminary approval by early October 2023. *Id.* ¶ 19. The Parties continued negotiations and drafting efforts, seeking an extension of their early October deadline on September 27, 2023. *Id.* ¶ 20. On September 28, 2023, the Court granted the Parties' request, setting the deadline to file the Settlement Agreement and Motion for Preliminary Approval for October 24, 2023. *Id.* ¶ 21. Over the following weeks, the Parties diligently drafted, negotiated, and finalized the settlement agreement, notice forms, and agreed upon a Settlement Administrator. *Id.* ¶ 22. A copy of the final and executed Settlement Agreement ("Agr."), is attached as Exhibit 1 to the Declaration of Danielle L. Perry in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 35-2.

Despite the grounds that Plaintiff believes exist for her claims, which TOC denies, none is certain to resolve in Plaintiff's favor on the merits. Further litigation would subject Plaintiff to numerous risks, including the risk that she and the other Class Members get no recovery at all. To the contrary, the Settlement provides certain and significant relief to Members of the Class and Plaintiff strongly believes that it is favorable for the Settlement Class  fair, reasonable, adequate, and worthy of preliminary approval. *Id.* ¶ 29.

### III. <u>SUMMARY OF SETTLEMENT</u>

#### A. Settlement Class

The Settlement Class includes all natural persons residing in the United States who were sent notice that their Private Information was potentially impacted in the Data Incident. Agr. ¶ 1.6. The Class specifically excludes (i) Defendant and its employees, officers, and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this Settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

#### B. Settlement Benefits

The Settlement negotiated on behalf of the Class provides for two separate forms of relief. *See generally*, *id.* § 2. First, TOC will provide direct monetary relief to class members who submit timely and valid claims for reimbursement of actual documented ordinary and extraordinary expenses stemming from the Data Incident, as well as reimbursement for up to three hours of lost time spent dealing with the Data Incident. *Id.* ¶ 2.1. Second, TOC will provide one-bureau credit monitoring and identity theft restoration services for up to two years for Settlement Class Members who submit timely and valid claims. *Id.* ¶ 2.3. For those Class Members who previously enrolled in the credit monitoring services offered by Defendant following the Data Incident, these Automatic Credit Monitoring Class Members will be automatically provided one year of additional 1-bureau credit monitoring services, without the need to make any affirmative claim. *Id.*

##### 1. *Monetary Relief*

The monetary relief available to Settlement Class Members who submit timely and Valid claims are divided into two separate categories. *Id.* ¶ 2.1. The first category is to provide expense

reimbursement for documented out-of-pocket expenses up to $1,500 per Class Member, incurred as a result of the Data Incident including: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; (vii) unreimbursed losses due to fraud or identity theft; and (viii) any other charge or loss reasonably related to the Data Incident incurred by Class Members between March 20, 2023 and the Claims Deadline. *Id.* ¶ 2.1.1. Expenses must be supporting documentation to be compensable. *Id.* Also included within the first category, Class members can also collect payment for up to three hours of lost time, compensable at a rate of $20 per hour, so long as at least one full hour was spent dealing with the Data Incident. *Id.* ¶ 2.1.2. Lost time is compensable without any documentation: Class Members must simply attest to the amount of time spent responding to issues raised by the Data Incident and provide a description of the time spent. *Id.*

The second category allows Class Members to collect compensation for up to $4,000 per Class Member for documented extraordinary out-of-pocket losses that (i) are actual, documented, and unreimbursed; (ii) were more likely than not caused by the Data Incident; (iii) occurred between March 20, 2023 to the Claims Deadline; and (iv) are not already covered by one more of the above-referenced reimbursed expenses. *Id.* ¶ 2.1.3.

### 2. *Credit Monitoring and Identity Theft Restoration Services*

The Settlement also provides for Credit Monitoring and Identity Theft Restoration Services to be offered to Settlement Class Members. *Id.* 2.3. Class Members who did not previously enroll in the credit monitoring services offered by Defendant following the Data Incident are eligible to submit claims for two years of one-bureau identity theft protection and credit monitoring services. *Id.* Class Members who previously enrolled in the monitoring services offered by Defendant will

*automatically* be provided an additional year of one-bureau credit monitoring services without the need to make any affirmative claim. *Id.* The credit monitoring services provided have an estimated retail value of $120 per claimant per year; approximately 2% of Class Members who previously claimed one-year from Defendant will *automatically* receive an additional year.

The Settlement Benefits are not subject to any aggregate cap, meaning every Class Member that submits a valid claim will receive relief. *Id.* ¶ 2.4.

The Settlement benefits are provided in exchange for a release of claims ("Released Claims") as set forth in the Settlement Agreement. *Id.* § 6.

## C.    Attorneys' Fees, Costs, and Plaintiff's Service Awards

By separate motion filed on February 20, 2024, Plaintiff seeks an award of attorneys' fees and costs totaling $150,000 (less than 1% of the value of the cash and other benefits available to Settlement Class Members). *See* Pl.'s Mot. for Att'ys' Fees, Costs & Service Awards ("Fees Mot."), ECF No. 43.

## D.    The Notice and Claims Process

In accordance with the Preliminary Approval Order, the Parties engaged Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Notice Specialist and Settlement Administrator in this case to implement the Notice Program as preliminarily approved by this Court.

### 1.    CAFA Notice

On November 6, 2023, Epiq sent 57 CAFA Notice Packages ("CAFA Notice"). Decl. of Notice and Claims Administrator Cameron R. Azari, *Esq.* ¶ 8 ("Azari Decl."), attached herewith as **Exhibit A**. The CAFA Notice was mailed via United States Postal Service ("USPS") Certified Mail to 57 officials (the Attorneys General of 49 states, the District of Columbia, and the United States Territories). *Id.* As per the direction of the Office of the Nevada Attorney General, the

CAFA Notice was sent to the Nevada Attorney General electronically via email. *Id.* The CAFA Notice was also sent via United Parcel Service ("UPS") to the Attorney General of the United States. *Id.*

      2.   *Class Notice*

On November 20, 2023, Epiq received one data file with 43,885 unique, identified Class Member records, which included names and mailing addresses. *Id.* ¶ 10. Epiq deduplicated and rolled-up the records and loaded the unique, identified Class Member records into its database for this Settlement. *Id.* These efforts resulted in 43,884 unique, identified Class Member records, which were sent a Short Notice (in the form of a double-postcard). *Id.*

On January 8, 2024, Epiq sent 43,884 Short Notices to all identified Class Members with an associated physical address. *Id.* ¶ 11. The Short Notice was sent via USPS first-class mail. *Id.* The Short Notice clearly and concisely summarized the case, the Settlement, and the legal rights of the Class Members. *Id.* The Short Notice postcard included a detachable address update form that the recipient could return to Epiq if they wanted to update their address. *Id.* In addition, the Short Notice also directed the recipients to the Settlement Website to access additional information. *Id.*

Prior to sending the Short Notices, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information was up-to-date and accurately formatted for mailing.[5] *Id.* ¶ 12. In addition, the addresses were certified through the Coding Accuracy Support System ("CASS") to ensure the quality of the zip

---

[5] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. *Id*. This address updating process is standard for the industry and for the majority of promotional mailings that occur today. *Id*.

Short Notices returned as undeliverable were also re-mailed to any new address available through USPS information (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired, but was still within the time period in which the USPS returns the piece with the address indicated), or to better addresses that are found using a third-party address lookup service. *Id*. ¶ 13. As of February 23, 2024, Epiq has remailed 1,602 Short Notices. *Id*.

Additionally, a Claim Form and/or Long Form Notice was mailed to all persons who requested one via the toll-free telephone number or by other means. *Id*. ¶ 14. As of February 23, 2024, 21 Claim Forms and/or Long Form Notices have been mailed as a result of such requests. *Id*.

### 3. Notice Results

As of February 23, 2024, Short Notice was delivered to 42,259 of the 43,884 unique, identified Class Members. *Id*. ¶ 15. This means the individual notice efforts reached approximately ***96.2%*** of the identified Class Members. *Id*.

In addition to the Direct Mail Notice, Epiq also established a Settlement Website and Toll-Free telephone hotline to serve as additional resources for Settlement Class Members. Specifically, on January 5, 2024, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.TOCsettlement.com). *Id*. ¶ 16. As of February 23, 2024, there have been 543 unique visitor sessions to the Settlement Website, and 2,549 web pages have been presented. *Id*. On January 5, 2024, a toll-free telephone number (1-888-928-4179) was established

for the Settlement. *Id*. ¶ 17. As of February 23, 2024, there have been 117 calls to the toll-free telephone number representing 316 minutes of use. *Id*.

> 4.    *Claims, Exclusion, Objections*

As of February 23, 2024, out of approximately 46,679 Settlement Class Members, *only three* have sought to exclude themselves from the Settlement and *zero* have objected.[6] *Id.* ¶ 21.

The deadline for Class Members to file a claim is April 8, 2024.  As of February 23, 2024, Epiq has received 308 Claim Forms (307 online and 1 paper). Since the April 8, 2024, claim filing deadline has not yet passed, these numbers are preliminary.[7] *Id.* ¶ 23.

**E.    Claims Processing and Payment**

The Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. Agr. § 8. After the Settlement is approved and the time for any appeal has passed, the Settlement Claims Administrator will also be responsible for processing and transmitting Settlement Class Member payments and providing enrollment codes for those Class Members who made a claim for credit monitoring services. *Id.*

**IV.    <u>LEGAL AUTHORITY</u>**

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Ohio Pub. Int. Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio Apr. 27, 1982) (citing *Franks v. Froger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981)). Before approving a settlement, however, a district court must conclude that it is 'fair, reasonable, and adequate.'"

---

[6] The deadline to request exclusion (opt-out) from the Settlement or to object to the Settlement is March 8, 2024.

[7] Plaintiff will provide updated numbers once all deadlines have passed.

*Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *3 (E.D. Mich. Dec. 10, 2018) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*Int'l Union*") (citing Fed. R. Civ. P. 23)); *see also* Fed. R. Civ. P. 23(e)(2). "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." *Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 4:16-cv-12808, 2019 WL 3530822, at *2 (E.D. Mich. Aug. 2, 2019) (internal quotations omitted) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)). The Court must also determine whether the Notice provided satisfies the requirements of Rule 23. *Raden*, 2019 WL 3530822, at *2.

## V.   **ARGUMENT**

### A.   **The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as Well as Rule 23.**

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Notice to the settlement class should include individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The claims rate should not be viewed as a reflection on the adequacy of the notice. *See In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 290–91 (E.D. Mich. 2017) (citing *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 235–36 (S.D.W. Va. 2005) (concluding that a claims

rate of 6,524 claimants out of a settlement class that could have potentially included millions did not demonstrate the inadequacy of the notice, noting that "many factors contribute to the claims response rate," and observing that "claims response levels will tend to vary with the circumstances, types of class notices employed, and size of individual claims involved in each case") (internal quotation marks and citations omitted)).

First, the content of the Notice adequately informed Settlement Class Members of their rights and obligations under the Settlement. The Direct Mail Notice contained a summary of key terms of the Settlement Agreement and directed Settlement Class Members to the Settlement Website and Toll-Free telephone hotline where they could obtain additional information. Azari Decl. ¶ 11. The Settlement Website dedicated to this matter, www.TOCsettlement.com, provides information to the Settlement Class Members and a straight-forward means by which Class Members can file a claim. *Id.* ¶ 16. The website URL was set forth in the Notice. *Id.* In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* The toll-free telephone hotline, 1-888-928-4179, was established and is maintained for potential Settlement Class Members to call and obtain information about the Settlement. *Id.* ¶ 17. Callers are able to hear an introductory message and also have the option to learn more about the Settlement in the form of recorded answers to FAQs. *Id.*

Further, the Settlement Administrator—with the assistance of the Parties—has taken extraordinary measures to ensure individual Notice reached as many of the Settlement Class Members as possible. Out of approximately 46,679 Class Members, Epiq sent, in its initial effort, 43,884 Short Notices (in the form of a double-postcard) to all identified Class Members with an

associated physical address. *Id.* ¶ 11. Prior to sending the Short Notices, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information was up-to-date and accurately formatted for mailing.[8] In addition, the addresses were certified through the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. Of the 43,884 Short Notices initially sent, 1,602 were immediately remailed after being returned with forwarding addresses or Epiq finding a better address using a third-party address lookup service. *Id.* ¶ 13.

These extensive efforts resulted in direct and individual Notice reaching an estimated *96.2%* of identified Class Members—a deliverable rate that exceeds the requirements of due process and Rule 23. *Id.* ¶ 15; *see also Bowman v. Art Van Furniture*, 2018 WL 6445389, at *3 (finding a combined email and mail notice program with a deliverable rate of 92.6% satisfied the requirements of Rule 23 and due process).

Accordingly, the Notice program should be approved as meeting the requirements of due process and Rule 23.

**B.    The Settlement Terms Are Fair, Adequate, and Reasonable.**

Federal Rule 23(e)(2) requires certain factors to be considered by a court before granting final approval of a class action settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative

---

[8] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Before the 2018 revisions to Rule 23(e), the Sixth Circuit had developed its own list of factors for consideration in determining whether to grant final approval of a class action settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union*, 497 F.3d at 631; *see also UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The Court may choose to consider only those factors that are relevant to the settlement at hand. *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2018 WL 7108016 (E.D. Mich. Nov. 6, 2018); *see also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

While there is some overlap between the two sets of standards, as is consistent with practice in the Middle District of Tennessee, Plaintiff will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the factors historically considered by Sixth Circuit Courts. *See e.g.*, *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty. v. Momenta Pharms., Inc.*, No. 3:15-cv-01100, 2020 WL 3053467 (M.D. Tenn. May 20, 2020) (slip op.) (granting final approval of class action settlement after considering both the requirements set forth in Rule 23 and factors traditionally enumerated by the Sixth Circuit).

The Agreement reached by Parties here meets the standards set forth by Federal Rules of Civil Procedure and Courts in this Circuit and warrants preliminary approval.

1. *The Settlement Agreement Meets the Requirements of Rule 23 and Should be Approved.*

   a. <u>Class Representatives and Class Counsel have adequately represented the Class.</u>

The adequacy requirement of Rule 23(e)(2)(A) is satisfied where (1) the representative has common interests with unnamed members of the class, and (2) it appears that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). In the context of settlement, this includes consideration of the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment. Formal discovery is not required: the relevant inquiry with respect to this factor is whether a plaintiff has "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and adequacy of the settlement." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001)); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)); *see also Macy v. GC Servs. Ltd. P'ship*, No. 3:15-cv-819, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019) (slip op.).

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, proposed Settlement Class Counsel conducted extensive research regarding Plaintiff's claims, Defendant, and the Data Incident. Perry MPA Decl. ¶¶ 10–11. As such, and considering counsel's extensive experience in data breach litigation (*see, e.g.*, Perry MPA Decl. ¶¶ 3–9, Ex. 2), the Parties were able to carry out settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

In addition, the adequacy of representation requirement is satisfied because Representative Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. Plaintiff has common interests with unnamed Members of the Class and has vigorously represented the interests of the Class through qualified counsel. *See Senter v. General Motors Corp.*, 532 F. 2d 511, 525 (6th Cir. 1976). As discussed *supra*, the Plaintiff's claims here are aligned with the claims of the other Class Members. Plaintiff thus have every incentive to vigorously pursue the claims of the Class, as she has done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. Perry MPA Decl. ¶ 26. Further, Plaintiff retained qualified and competent counsel with extensive experience in litigating consumer class actions and privacy actions in particular. *See id.* ¶¶ 2–9.

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Cap. One TCPA Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. Feb. 12, 2015); *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, proposed Settlement Class Counsel believe that the Parties' Settlement is fair, reasonable, and adequate, and in the best interests of the Members of the Class. Perry MPA Decl. ¶ 29. Proposed Settlement Class Counsel also believes that the benefits of the Parties' Settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

b.  The Settlement was the result of informed, non-collusive, arm's-length negotiations by experienced counsel.

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. Indeed, settlements are regularly granted approval where a court finds that they are the product of informed, non-collusive, arm's-length negotiations. *Bronson v. Bd. of Educ. of Cincinnati*, 604 F. Supp. 68, 78 (S.D. Ohio June 22, 1984) (approving settlement where there was no hint of collusion in the negotiating process).

The Settlement here is the result of intensive arm's-length and non-collusive negotiations between attorneys experienced in both class actions generally and data security cases in particular. *See* Perry MPA Decl. ¶ 28, Ex. 2. The agreement was only finalized after weeks of initial negotiations on central terms, and months of going back and forth on the precise terms of the agreement and accompanying notice and claim forms. Perry MPA Decl. ¶¶ 16-–0. As such, this factor weighs in favor of preliminary approval.

c.  The relief provided for the Class is adequate.

The Settlement guarantees Class Members who submit valid claims relief for lost time or out-of-pocket expenses which they attest were incurred as a result of the Data Incident. Not only can Plaintiff and Class Members be reimbursed for costs they incurred related to the Data Incident but they can also receive up to two-years of Credit Monitoring and Identity Restoration Services, upon submitting a valid Claim, that includes identity theft insurance designed to protect them if their information is misused in the future. Documented expense reimbursement will run up to $1,500 per person for standard expenses delineated in the Settlement Agreement and up to $4,000 per person for other documented extraordinary expense reimbursements also described in the Settlement Agreement, all offered without being subject to any sort of aggregate cap. Agr. § 2.

This Settlement Agreement includes terms within the range of those approved by other courts for similar data security incidents. *See, e.g.*, *Kenney v. Centerstone of America, Inc.*, No. 3:20-cv-01007 (M.D. Tenn. Aug. 9, 2021) (granting final approval of settlement providing up to $500 in ordinary expense reimbursements, $1,500 in extraordinary expense reimbursements, and up to two years of credit monitoring services); *Chacon v. Nebraska Medicine*, No. 8:21-cv-00070 (Dist. Neb. Sept. 15, 2021) (granting final approval of settlement providing up to $300 in ordinary expense reimbursement, $3,000 in extraordinary expense reimbursements, and one-year of credit monitoring services); Order Granting Final Approval, *Fulton-Green. v. Accolade, Inc*., No. 2:18-cv-00274 (E.D. Pa. Sept. 24, 2019), ECF No. 39 (granting approval of data breach class action settlement providing for expense reimbursement up to $1,500 per class member, and increased cyber security measures of undisclosed worth for two years following the Data Incident); *Mowery v. Saint Francis Healthcare Sys.* No. 1:20-cv-00013 (E.D. Mo. Dec. 22, 2020) (approving settlement in healthcare data breach matter providing for up to $180 in reimbursements per class member, as well as one-year credit monitoring and identity theft restoration services).

This proposed Settlement provides full, fair, and adequate compensation for any actual injuries sustained related to the Data Incident. Moreover, the substantial and immediate benefits achieved by the Settlement avoid the risks, uncertainties, and delays of continued litigation. If this lawsuit were to continue, Plaintiff and Class Members would face a number of difficult challenges, including surviving a motion to dismiss, obtaining class certification, and maintaining certification through trial and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this Lawsuit. This is another indication that the proposed Settlement is fair, reasonable, and adequate and should be approved.

i.      *The costs, risks, and delay of trial and appeal weigh in favor of approval.*

The relief provided for by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. The value achieved through the Settlement Agreement is guaranteed, whereas chances of prevailing on the merits are uncertain. While Plaintiff strongly believes in the merits of her case, she also understands that TOC will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data privacy cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data privacy cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

While Plaintiff is confident in the merits of her claims—it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

ii.      *The method of processing claims and distributing relief is clear and efficient.*

As described above, all Class Members will have 90-days from the Notice Date to submit a claim for ordinary and/or extraordinary expense reimbursements, as well as for credit monitoring and identity theft restoration services. The Settlement Administrator is responsible for reviewing,

19

determining the validity of, and processing all claims submitted by Settlement Class Members. After the Settlement is approved and the time for any appeal has passed, the Settlement Administrator will also be responsible for processing and transmitting Settlement Class Member payments and providing enrollment codes for those Class Members who made a claim for credit monitoring services.

As such, the Settlement provides for effective processing and distribution of relief and should be approved.

### iii. The terms of proposed attorneys' fees and Service Award are reasonable.

On February 20, 2024, Plaintiff moved for approval of attorneys' fees, costs, and Plaintiff's Service Award. Below is a brief summary and explanation of why the fees, costs, and Service Award that Plaintiff seeks are reasonable and should be approved. In short, the fees and Service Award requested are reasonable, well withing the range of those accepted by Sixth Circuit Courts, and should be preliminarily approved.

### a. The Class Representative's requested Service Award is reasonable and does not constitute improper preferential treatment.

While the Sixth Circuit has not explicitly approved the practice of providing service awards (also referred to as "incentive" awards), they are regularly approved to the extent they are not so large as to create a "divergence of interests between the named representatives and the class." *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020), citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). The Sixth Circuit has raised concern where the named plaintiff's service award leaves them no reason to pay any attention to the mechanism by which the class members must make their recovery. "The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the

remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). Still, courts in this Circuit regularly award service awards to named plaintiffs. *See, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp 2d 766, 787 (S.D. Ohio Mar. 31, 2010) (awarding each of three class representatives $5,000).

The Class Representative here will seek an incentive award of $2,000 for her contributions to the class. Perry MPA Decl. ¶ 25. The incentive award is meant to compensate Plaintiff for her efforts which include maintaining contact with counsel, assisting in the investigation of the case, reviewing and approving pleadings, remaining available for consultation throughout settlement negotiations, and for answering counsel's many questions. *Id.* ¶ 26. The award that she will request does not run afoul of Sixth Circuit guidance: it is *less than* the up to $3,000 recoverable by each Class Member, and the Class Representatives will still have to go through the same claims process as the Class Members to receive reimbursement for expenses and Identity Theft Protection Services. As such, this factor weighs in support of preliminary approval.

> b. *Attorneys' fees requested are within the range of those regularly accepted by Sixth Circuit Courts.*

By separate motion, Plaintiff seeks an award of attorneys' fees and costs totaling $150,000 (less than 1% of the value of the cash and other benefits available to Settlement Class Members). *See* Fees Mot., ECF No. 43. This falls well within the ordinary range for attorneys' fees in approved class action settlements. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532–33 (E.D.Mich.2003) (noting "the ordinary range for attorneys' fees [is] between 20%-30%"). Moreover, distribution of fees, costs, and service awards will not occur until 30-days after the Settlement has been approved by the Court and all time for appeals has passed. As such, and as

explained in greater detail in Plaintiff's separate motion for fees, costs, and service awards, the requested attorneys' fees do not provide justification for denial of preliminary approval.

### c. *No agreements exist that require disclosure under Rule 23(e)(3).*

There are no additional agreements that require identification and/or examination under Rule 23(e)(3). As such, this factor weighs in favor of preliminary approval.

### d. <u>The Settlement Agreement treats proposed Class Members equitably.</u>

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Each Class Member will have 90-days from the Notice Date to make a claim for Settlement benefits based on the amount of expenses they have incurred and time they have spent related to the Data Incident. Moreover, any Class Member can make a claim for up to 24-months of credit monitoring and identity restoration services. As such, each Class Member has an equal opportunity to benefit from the Settlement.

Moreover, Plaintiff's modest requested incentive award of $2,000 represents a fraction of the amount that *any* Class Member can make a claim for. Thus, there is no concern that they may be being treated unequitable or compromising the interest of the class for personal gain:

> The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs. The members' incentives are thus aligned.

*Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003) (citing *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1161 (9th Cir. 2013)). Accordingly, this factor weighs in favor of settlement approval.

2. *The Settlement Also Warrants Approval in Light of the Factors Traditionally Considered by Sixth Circuit Courts.*

First, there is no risk of fraud or collusion: Class Counsel vigorously negotiated the settlement engaging in multiple rounds of non-collusive, arms' length negotiations. Perry MPA Decl. ¶ 16. Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless contrary evidence is offered. *People First of Tenn. v. Clover Bottom Dev. Ctr.*, No. 3:95- cv-1227, 2015 WL 404077 (M.D. Tenn. Jan. 29, 2015) (quoting *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155379, at *4 (E.D. Tenn. May 17, 2013)); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011). This factor weighs in favor of settlement approval.

Second*,* the complexity, expense, and likely duration of the litigation weigh in favor of Settlement. The Settlement provides immediate relief and protections for Class Members, where continued litigation would lead to inevitable delay of an uncertain outcome. "Most class actions are inherently complex and settlement avoids the costs, delays and a multitude of other problems associated with them." *People First of Tenn.*, 2015 WL 404077 (quoting *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *4); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). The same is particularly true here, where the quickly evolving nature of data breach cases leads to further uncertainty and risk. Accordingly, this factor weighs in favor of settlement approval.

Third, Plaintiff has conducted sufficient discovery—exchanging information necessary to evaluate the strengths and weaknesses of Plaintiff's claims and TOC's defenses—to "obtain[ ] a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and adequacy of the settlement." Perry MPA Decl. ¶ 15; *see also N.Y. State Tchrs.' Ret. Sys.*, 315 F.R.D. at 236 (E.D. Mich. 2016) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1015);

*Sheick*, WL 4136958, at *19 (quoting *Newby v. Enron Corp.*, 394 F.3d at 306); *see also Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *2. Thus, this factor weighs in favor of settlement approval.

Fourth, success in continued litigation is uncertain. While Plaintiff is confident in the strength of her claims, Plaintiff is also pragmatic in her awareness of the various defenses available to TOC, as well as the risks inherent to continued litigation. TOC denies the allegations raised by Plaintiff, denies all allegations of wrongdoing or liability, and will vigorously defend the case in litigation. Moreover, data privacy cases like this one generally face substantial hurdles— even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data privacy cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Here, Settlement provides a guaranteed and significant positive outcome for Class Members, and thus should be approved.

Fifth, experienced Class Counsel strongly believe that the Settlement Agreement is favorable for the Settlement Class; fair, reasonable, and adequate; and worthy of final approval. Perry MPA Decl. ¶ 29. The Class Representative has also reviewed and approved the Settlement. *Id.* ¶ 27. Class Counsel have decades of combined experience as vigorous class action litigators and a demonstrated track record of successfully litigating data breach cases on behalf of their clients and classes. *Id.* ¶¶ 4–9.

Sixth, As of February 23, 2024, out of approximately 46,679 Settlement Class Members, *only three* have sought to exclude themselves from the Settlement and *zero* have objected.[9] *Id.* ¶

---

[9] The deadline to request exclusion (opt-out) from the Settlement or to object to the Settlement is March 8, 2024.

21. The lack of objections and small number of exclusions strongly support approval of the Settlement. *See In re Regions Morgan Keegan Secs., Derivative & ERISA Litig.*, No. 2:09-md-2009-SMH, 2014 WL 12808031, at * 4 (W.D. Tenn. Dec. 24, 2014) ("If only a small number of objections are received from a large class, that fact can be viewed as indicative of the adequacy of the settlement") (collecting cases); *see also Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty.*, 2020 WL 3053467 (M.D. Tenn. May 20, 2020) (approving class action settlement with zero objections); *People First of Tenn.*, 2015 WL 404077, at *3 (approving settlement with limited objections); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *9 (W.D. Tenn. Dec. 4, 2015) (granting final approval of a settlement with 2,200 potential class members and 144 objectors).

And finally, the proposed Settlement benefits the public interest. "[T]here is a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve." *People First of Tenn.*, 2015 WL 404077, at *3 (citing *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *7). Moreover, "[t]here are strong and important public interests in deterring identity theft and ensuring that private companies comply with applicable federal laws." *Todd v. Retail Concepts, Inc.*, No. 3:07-0788, 2008 WL 3981593, at *5 (M.D. Tenn. Aug. 22, 2008). Accordingly, the public interest weighs in favor of settlement approval.

## VI.     CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. For the above reasons, Plaintiff respectfully requests this Court grant Plaintiff's Motion for Final Approval of Class Action Settlement entering the proposed Final Approval Order filed herewith, finally certifying the Settlement Class for purposes of settlement, appointing Class Counsel and Plaintiffs as

representatives for the Class, awarding Plaintiff Service Award in the amount of $2,000, granting Class Counsel attorneys' fees and costs totaling $150,000 (less than 1% of the value of the cash and other benefits available to Settlement Class Members), and granting final approval of this Settlement.

Dated: February 29, 2024

By: /s/ *Lisa A. White*
Lisa A. White (TN Bar No. 026658)
Danielle L. Perry (*admitted pro hac vice*)
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, D.C. 20015
Tel: (202) 429-2290
lwhite@masonllp.com
dperry@masonllp.com

*Counsel for Plaintiff and the Proposed Class*